David E. Mollón (DM-5624)
Steven M. Schwartz (SS-4216)
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, New York 10166
(212) 294-6700

*Attorneys for Defendants Amaranth Advisors L.L.C.*
*and Amaranth Advisors (Calgary) ULC,*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
                                               :
**IN RE: AMARANTH NATURAL GAS**                :
**COMMODITIES LITIGATION**                     :          **Electronically Filed**

**This Document Relates to:**                  :          **Master File No.: 07 Civ. 6377 (SAS)**

**ALL ACTIONS**                                :          **Oral Argument Requested**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**MEMORANDUM OF LAW IN SUPPORT**
**OF MOTION TO DISMISS**
**THE CORRECTED CONSOLIDATED CLASS ACTION COMPLAINT**
**BY DEFENDANTS AMARANTH ADVISORS L.L.C.**
**AND AMARANTH ADVISORS (CALGARY) ULC**

# TABLE OF CONTENTS

Page(s)

**Preliminary Statement**................................................................................................1

**Factual Background**..................................................................................................3

    A.   Amaranth Advisors and Their Trading in Natural Gas Futures Contracts ......................3

    B.   Plaintiffs' Complaint And Pre- Discovery Information ...................................5

**Argument**..............................................................................................................6

I.    PLAINTIFFS LACK STANDING TO ASSERT CLAIMS BASED ON MANIPULATION OF SETTLEMENT PRICES ......................................................6

II.   PLAINTIFFS FAIL TO ALLEGE FACTS SUPPORTING A PRIMARY MANIPULATION VIOLATION UNDER THE CEA ..............................................8

    A.   Rule 9(b) applies to Plaintiffs' Manipulation Claim ...........................................8

        1.   Under Rule 9(b), Plaintiffs Must Allege Facts Justifying A Strong Inference Of Manipulative Intent.............................................................10

        2.   Even Under Rule 8, Plaintiffs' Vague and Conclusory Group Allegations Are Not Adequate ..........................................................................11

    B.   The Complaint Fails To Allege Manipulative Conduct..................................................11

    C.   The Complaint Fails To Allege Intent To Manipulate The Market Under Either Rule 9(b) or 8(a) ....................................................................................14

        1.   Plaintiffs Fail To Allege Facts Justifying A Strong Inference Of Manipulative Intent As Required Under Rule 9(b).................................................15

            a.   The Class Period In General ....................................................................16

            b.   February 24, 2006 ..................................................................................17

            c.   March 29, 2006 ......................................................................................19

            d.   April 26, 2006 ........................................................................................19

        2.   Plaintiffs Have Not Sufficiently Plead Intent To Comply With Rule 8 ...............20

    D.   The Complaint Fails To Allege The Ability To Manipulate The Market ......................21

    E.   The Complaint Fails To Allege Amaranth Advisors Caused Artificial Prices..............22

## TABLE OF CONTENTS
(continued)

Page(s)

III.  PLAINTIFFS' SECONDARY LIABILITY CLAIMS MUST BE DISMISSED FOR
      FAILURE TO PLEAD SUFFICIENT FACTS OR BECAUSE PLAINTIFFS LACK
      STANDING TO ASSERT THE CLAIMS ............................................................23

      A.   Plaintiffs Plead Insufficient Facts Supporting An Aiding And Abetting
           Manipulation Claim .......................................................................................23

      B.   Plaintiffs' CEA Section 2(a)(1)(B) Claim Must Be Dismissed Because Plaintiffs
           Do Not Allege The Requisite Elements Of An Agency Relationship.........................25

      C.   There Is No Private Right Of Action Under CEA Section 13(b) Or Rule 166.3 And
           None Of The Defendants Were CFTC Registrants ......................................................27

IV.   PLAINTIFFS FAIL TO PLEAD THE ELEMENTS OF UNJUST ENRICHMENT ...........28

V.    PLAINTIFFS DO NOT ALLEGE ANY OF THE ELEMENTS FOR A
      CONSTRUCTIVE TRUST .....................................................................................29

Conclusion ...........................................................................................................30

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
    493 F.3d 87 (2d Cir. 2007).................................................................................10, 12, 13, 15

*B. H. Papasan v. Allain*,
    478 U.S. 265 (1986)..........................................................................................................11

*Bd. of Trade v. SEC*,
    187 F.3d 713 (7th Cir. 1999) ............................................................................................21

*Bell Atlantic Corp. v. Twombly*,
    --- U.S. ---, 127 S. Ct. 1955 (2007)...........................................................................11, 23

*Benfield v. Mocatta Metals Corp.*,
    No. 91-CIV-8255 (LJF), 1992 WL 58879 (S.D.N.Y. Mar. 13, 1992)....................................24

*Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*,
    373 F.3d 296 (2d Cir. 2004)................................................................................................28

*Cargill, Inc. v. Hardin*,
    452 F.2d 1154 (8th Cir. 1971) .......................................................................................12, 21

*CFTC v. Commodities Fluctuations Sys., Inc.*,
    583 F. Supp. 1382 (S.D.N.Y. 1984)..................................................................................28

*CFTC v. Atha*,
    420 F. Supp. 2d 1373 (N.D. Ga. 2006) ..............................................................................12

*CFTC v. Bradley*,
    408 F. Supp. 2d 1214 (N.D. Okla. 2005) ............................................................................13

*CFTC v. Johnson*,
    408 F. Supp. 2d 259 (S.D. Tex. 2005) .......................................................................12, 15, 24

*CFTC v. Reed*,
    481 F. Supp. 2d 1190 (D. Colo. 2007)................................................................................12

*Chambers v. Time Warner, Inc.*,
    282 F.3d 147 (2d Cir. 2002)...............................................................................................18

*CompuDyne, Corp. v. Shane*,
    453 F. Supp. 2d 807 (S.D.N.Y. 2006)................................................................................28

*Damato v. Hermanson*,
   153 F.3d 464 (7th Cir. 1998) ..............................................................................24

*Ellison v. Am. Image Motor Co., Inc.*,
   36 F. Supp. 2d 628 (S.D.N.Y. 1999)...........................................................16, 23

*Fed. Treasury Enter. v. Spirits Int'l, N.V.*,
   425 F. Supp. 2d 458 (S.D.N.Y. 2006).................................................................29

*Fustok v. Conticommodity Servs. Inc.*,
   618 F. Supp. 1069 (S.D.N.Y. 1985)....................................................................27

*GFL Advantage Fund v. Colkitt*,
   272 F. 3d 189 (3d Cir. 2001)........................................................................12, 13

*Guttman v. CFTC*,
   197 F.3d 33 (2d Cir. 1999)..................................................................................25

*In re Bayou Hedge Funds Inv. Litig.*,
   472 F. Supp. 2d 528 (S.D.N.Y. 2007).................................................................29

*In re Blech Sec. Litig.*,
   928 F. Supp. 1279 (S.D.N.Y. 1996)....................................................................16

*In re College Bound Consol. Litig.*,
   No. 93 Civ 2348, 1995 WL 450486 (S.D.N.Y. July 31, 1995) ......................14, 20

*In re Cox*,
   1987 CFTC LEXIS 325 (CFTC July 15, 1987)....................................................21

*In re Crude Oil Commodity Litig.*,
   No. 06 Civ. 6677, 2007 WL 1946553 (S.D.N.Y. June 28, 2007).................. passim

*In re First Cent. Fin. Corp.*,
   377 F.3d 209 (2d Cir. 2004)................................................................................30

*In re Hohenberg Bros.*,
   CFTC No. 75-4, 1977 WL 13526 (CFTC Feb. 18, 1977) ....................................14

*In re Indiana Farm Bureau Coop. Assoc., Inc.*,
   CFTC No. 75-14, 1982 WL 30249 (CFTC Dec. 17, 1982)....................8, 14, 15, 21

*In re Initial Public Offering Sec. Litig.*,
   No. 21 MC 92 (SAS), 2008 WL 819762 (S.D.N.Y. Mar. 26, 2008) (Scheindlin, J.)..............18

*In re Ivan F. Boesky Securities Litigation*,
   36 F.3d 255 (2d Cir. 1994)..................................................................................26

*In re Motel 6 Secs. Litig.*,
   161 F. Supp. 2d 227 (S.D.N.Y. 2001)......................................................................28

*In re Natural Gas Commodity Litig.*,
   337 F. Supp. 2d 498 (S.D.N.Y. 2004) (*"Natural Gas I"*)....................................9, 12

*In re Natural Gas Commodity Litig.*,
   358 F. Supp. 2d 336 (S.D.N.Y. 2005) (*"Natural Gas II"*).........................................9

*In re Olympia Brewing Co. Sec. Litig.*,
   613 F. Supp. 1286 (N.D. Ill. 1985) ..................................................................14, 19

*In re Pfizer, Inc. Sec. Litig.*,
   No. 06 Civ. 14199, 2008 WL 540120 (S.D.N.Y. Feb. 28, 2008) .............................15

*In re Richardson Sec., Inc.*,
   Comm. Fut. L. Rep. (CCH) 21,145 (CFTC Jan. 27, 1981) (*see* Mollón Dec. Ex. A) .......23, 24

*In re Soybean Futures Litig.*,
   892 F. Supp. 1025 (N.D. Ill. 1995) .........................................................................8

*In the Matter of Avista Energy, Inc. & Michael T. Griswold*,
   CFTC No. 01-21, 2001 WL 951736 (CFTC Aug. 21, 2001) ...................................13

*Judith M. v. Sisters of Charity Hosp.*,
   93 N.Y.2d 932 (1999) ............................................................................................26

*Kolbeck v. LIT Am., Inc.*,
   923 F. Supp. 557 (S.D.N.Y. 1996)................................................................7, 25, 27

*Korwek v. Hunt*,
   646 F. Supp. 953 (S.D.N.Y. 1986)..........................................................................27

*Krause v. Forex Exch. Mkt., Inc.*,
   356 F. Supp. 2d 332 (S.D.N.Y. 2005).....................................................................23

*Leibowitz v. Cornell Univ.*,
   445 F.3d 586 (2d Cir. 2006)...................................................................................26

*Manela v. Gottlieb*,
   784 F. Supp. 84 (S.D.N.Y. 1992)......................................................................17, 22

*Martha Graham School and Dance Found., Inc. v. Martha Graham Center of
   Contemporary Dance, Inc.*,
   380 F.3d 624 (2d Cir. 2004)...................................................................................30

*Michele Pommier Models, Inc. v. Yanez*,
   14 F. Supp. 2d 331 (S.D.N.Y. 1998).......................................................................28

*Michelson v. Merrill Lynch Pierce, Fenner & Smith, Inc.*,
   619 F. Supp. 727 (S.D.N.Y. 1995)......................................................................27

*Miller v. N.Y. Produce Exch.*,
   550 F.2d 762 (2d Cir. 1977)..............................................................................12

*Mina Inv. Holdings Ltd. v. Lefkowitz*,
   51 F. Supp. 2d 486 (S.D.N.Y. 1999)..................................................................29

*Modica v. Modica*,
   791 N.Y.S.2d 134 (2d Dep't 2005)....................................................................30

*Mormels v. Girofinance, S.A.*,
   544 F. Supp. 815 (S.D.N.Y. 1982)....................................................................12

*Moss v. Morgan Stanley, Inc.*,
   553 F. Supp. 1347 (S.D.N.Y. 1983)..................................................................26

*Nanopierce Technologies, Inc. v. Southridge Capital Mgmt.*,
   02 Civ 0767, 2008 WL 250553 (S.D.N.Y. Jan. 28, 2008)..................................13

*O'Connor & Assocs. v. Dean Witter Reynolds, Inc.*,
   529 F. Supp. 1179 (S.D.N.Y. 1981)..................................................................26

*Reading Int'l, Inc. v. Oaktree Capital Mgmt. LLC*,
   317 F. Supp. 2d 301 (S.D.N.Y. 2003)................................................................28

*Ritchie Capital Mgmt., L.L.C. v. Coventry First LLC*,
   No. 07 Civ. 3494 (DLC), 2007 WL 2044656 (S.D.N.Y. July 17, 2007)..............26

*Rombach v. Chang*,
   355 F.3d 164 (2d Cir. 2004)................................................................................8

*Ruffolo v. Oppenheimer & Co.*,
   987 F.2d 129 (2d Cir. 1993)................................................................................3

*Santa Fe Indus., Inc. v. Green*,
   430 U.S. 462 (1977)............................................................................................9

*Scripps v. Smith, Hague & Co., Inc.*,
   679 F. Supp. 676 (E.D. Mich. 1988)..................................................................26

*Slusser v. CFTC*,
   210 F.3d 783 (7th Cir. 2000) ..............................................................................9

*Smith v. Local 819 I. B. T. Pension Plan*,
   291 F.3d 236 (2d Cir. 2002)..............................................................................11

*Sullivan & Long, Inc. v. Scattered Corp.*,
    47 F.3d 857 (7th Cir. 1995) ...................................................................................14

*Tatum v. Legg Mason Wood Walker, Inc.*,
    83 F. 3d 121 (5th Cir. 1996) .................................................................................23

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    --- U.S. ---, 127 S. Ct. 2499 (2007)....................................................10, 11, 16, 18

*Thornock v. Kinderhill Corp.*,
    749 F. Supp. 513 (S.D.N.Y. 1990)........................................................................24

*Transnor (Bermuda) Ltd. v. BP N. Am. Petroleum*,
    738 F. Supp. 1472 (S.D.N.Y. 1990).................................................................12, 15

*Treppel v. Biovail Corp.*,
    No. 03 CIV 3002, 2005 WL 2086339 (S.D.N.Y. Aug. 30, 2005) ...........................6

*U.S. v. Mulheren*,
    938 F.2d 364 (2d Cir. 1991)............................................................................14, 24

*Vitanza v. Bd. of Trade of the City of New York*,
    No. 00-cv-7393, 2002 WL 424699 (S.D.N.Y. Mar. 18, 2002).......................7, 8, 11

*Volkart Bros., Inc. v. Freeman*,
    311 F.2d 52 (5th Cir. 1962) ...................................................................................15

**STATUTES**

7 U.S.C. § 1 *et seq.* (2002)........................................................................................1

7 U.S.C. § 2(a)(1)(B) ...........................................................................................25, 26

7 U.S.C. § 6(b) ...........................................................................................................27

7 U.S.C. § 9...........................................................................................................6, 8, 9

7 U.S.C. § 13(b) ......................................................................................................6, 27

7 U.S.C. § 13c(b) ....................................................................................................6, 27

7 U.S.C. § 22(a)(1)(A-D)..........................................................................................6, 7

7 U.S.C. § 25(a)(1)(D) .................................................................................................7

**OTHER AUTHORITIES**

317 C.F.R. § 166.3 .................................................................................................2, 27, 28

*Excessive Speculation in the Natural Gas Market: U.S.*
    *Senate Permanent Subcomm. on Investigations Staff Report With Additional Minority*
    *Views*, 110th Cong. ......................................................................................................5

Federal Rule of Civil Procedure 8 ..........................................................2, 9, 11, 20, 26

Federal Rule of Civil Procedure 9(b)...................................................................9, 23

Federal Rule of Civil Procedure 42(a) ...........................................................................5

Pursuant to Federal Rules of Civil Procedure ("Rule(s)") 9(b), 8(a), 12(b)(1) and 12(b)(6), Defendants Amaranth Advisors L.L.C. and Amaranth Advisors (Calgary) ULC, (together, "Amaranth Advisors") respectfully submit this memorandum of law in support of their motion to dismiss Plaintiffs' Corrected Consolidated Class Action Complaint ("Complaint").[1]

### Preliminary Statement

In their Complaint, Plaintiffs throw everything against the proverbial wall, in vain hopes something will stick. In particular, Plaintiffs purport to assert: (1) primary manipulation under the Commodity Exchange Act ("CEA"), (2) at least four different claims of secondary liability under the CEA, 7 U.S.C. § 1 *et seq.* (2002), (3) an unjust enrichment claim, and (4) a request for a constructive trust. Plaintiffs, however, do not even have standing to bring several of their claims, and the remaining ones lack requisite factual allegations to survive a motion to dismiss.[2]

Virtually all of the factual allegations in the Complaint are tied to Plaintiffs' claim that Amaranth Advisors manipulated the *settlement prices* of the expiring natural gas futures contract on three specific days in 2006. The CEA, however, does not provide a private right of action for manipulation of *settlement prices*. Without a settlement price claim, Plaintiffs are left with a bare bones and utterly implausible manipulation claim: that Defendants somehow *contemporaneously* manipulated an astonishing 72 futures contracts extending six years into the future, over a seven-month period, based solely on having allegedly "large" trading positions in the market.[3] This Circuit, however, has held that "large," open market trading alone is not manipulative conduct for purposes of the CEA or securities laws. Plaintiffs allege nothing more.

---

[1] Amaranth Advisors join and incorporate by reference the arguments of all other Defendants in their motions to dismiss to the extent applicable.

[2] Plaintiffs are purported New York Mercantile Exchange ("NYMEX") natural gas traders.

[3] This seven-month period is referred to in the Complaint as the proposed class period of February 16, 2006 through September 28, 2006 (the "Class Period"). (Compl. ¶ 1).

Moreover, Rule 9(b) applies to Plaintiffs' manipulation claim and the Complaint does not plead manipulation with the requisite specificity required. Plaintiffs' manipulation claim even fails under the less stringent standard of Rule 8, as Plaintiffs do not allege that Amaranth Advisors *traded in each of the 72 contracts*, let alone possessed the requisite intent, the ability to manipulate the market, or caused artificial prices in all 72 contracts.

Plaintiffs also attempt to assert a manipulation claim against Amaranth Advisors based on every conceivable notion of secondarily liability. Plaintiffs assert two theories for which no private right of action exists: control person liability under the CEA and failure to supervise under Commodity Futures Trading Commission ("CFTC") Rule 166.3. Plaintiffs also allege that Amaranth Advisors aided and abetted purported manipulation by other Defendants. The Complaint, however, does not even suggest which Defendant was allegedly aided and abetted, much less how. Further, the Complaint lacks any factual allegation that Amaranth Advisors possessed the requisite specific intent for aiding and abetting. Instead, Plaintiffs merely lump Amaranth Advisors under the heading "Amaranth Defendants," which includes eight legally-distinct entities and three individuals. Likewise, any attempt to hold Amaranth Advisors liable for the actions of its alleged employees would fail, as any such employee would be acting outside the scope of his employment in taking part in any alleged manipulation.

Plaintiffs' unjust enrichment claim fairs no better. There are no factual allegations supporting a *substantial* relationship between Plaintiffs and Amaranth Advisors. Trading in the same commodity at some point during a seven-month period simply does not constitute a substantial relationship. Additionally, there are no allegations that any Defendant was enriched at Plaintiffs' *direct* expense. In fact, Plaintiffs concede that the Defendants *lost* money from the

trading at issue — hence it is illogical that they enjoyed any benefit at Plaintiffs' direct expense, a necessary element of an unjust enrichment claim.

Finally, Plaintiffs' request for a constructive trust is improper. The Complaint does not allege a confidential or fiduciary relationship or a transfer in reliance on a promise between Plaintiffs and any Defendant, or that any Defendant was unjustly enriched at Plaintiffs' expense, factors critical to imposing such an extreme remedy.

For all the above reasons, the Complaint should be dismissed in its entirety. Dismissal should be with prejudice because Plaintiffs have had the benefit of extensive pre-Complaint information regarding the alleged manipulative trading, they have filed several prior complaints, and after notice of the deficiencies set forth herein, they refused to amend. *See Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 130-31 (2d Cir. 1993) (affirming dismissal with prejudice where plaintiff had obtained pretrial discovery in an arbitration prior to filing complaint).[4]

### Factual Background

#### A.    Amaranth Advisors and Their Trading in Natural Gas Futures Contracts

Throughout the Class Period, Amaranth Advisors served as investment advisors to Amaranth LLC, a multi-strategy hedge fund with approximately $9 billion of assets under management ("the Master Fund"). Amaranth Advisors actively traded in, among other things, natural gas futures and swaps markets. The Master Fund, however, suffered substantial losses in September 2006 caused by dramatic price movements in the natural gas market. As a result, the Master Fund is "winding-down" its business. Thus, Amaranth Advisors is in the process of an orderly sale of the Master Fund's remaining investments so that the Master Fund can make *pro rata* cash distributions to its feeder funds, which in turn would make *pro rata* cash distributions

---

[4] On March 31, 2008, Amaranth Advisors sent a letter pursuant to this Court's rules to Plaintiffs' counsel stating the bases of the instant motion.

to their investors.  Accordingly, Amaranth Advisors has not actively traded on NYMEX since October 2006.

Under the CEA, the CFTC regulates futures contracts traded on exchanges such as the NYMEX.  A NYMEX natural gas futures contract ("NG contract") is a standardized contract, which takes the form of an obligation of the buyer to accept and the seller to deliver a specified quantity of natural gas at a specified place in the future.  During the Class Period, traders could buy or sell NG contracts to deliver natural gas in any future month for the current trading year plus five years.  Thus, there were 72 NG contracts trading on any given trading day.  As there is a contract for each month, contracts "expire," or cease trading, monthly.  If a trader has open contract positions at expiration, he must fulfill them by accepting or making physical delivery of natural gas.  The NYMEX determines settlement prices for expiring NG contracts after trading ends on the last day they trade, which is the third-to-last day of the month prior to which delivery has to be made (the "settlement day").  Specifically, the settlement price is generally the volume weighted average selling price during the last half-hour on the settlement day (2:00-2:30 p.m. or the "settlement period").

The vast majority of NG contracts are not left open at expiration, and thus do not result in physical delivery of natural gas.[5]  Instead, prior to expiry, buyers and sellers typically negate their obligations by entering into an offsetting contract.  Amaranth Advisors did not have the capacity to make or take physical delivery of natural gas, and thus always sought to offset its NG contract positions prior to expiration.

---

[5] *See* A Review of Recent Hedge Fund Participation in NYMEX Natural Gas and Crude Oil Futures Markets (NYMEX Mar. 1, 2005), *available at* http://www.nymex.com/media/hedgedoc.pdf.

B.     **Plaintiffs' Complaint And Pre- Discovery Information**

The four named Plaintiffs filed their respective complaints between July 12, 2007 and September 10, 2007.  On September 19, 2007, the four complaints were consolidated pursuant to Rule 42(a) in the above-captioned action.  On December 17, 2007, Plaintiffs filed a consolidated complaint.  Then on February 14, 2008, Plaintiffs filed their corrected consolidated complaint (the "Complaint"), asserting three claims against Amaranth Advisors: (1) primary manipulation under the CEA (Count I), (2) aiding and abetting and control person liability (Count II), and (3) unjust enrichment (Count V).

The Complaint should be dismissed with prejudice as Plaintiffs have had the benefit of extensive pre-Complaint information.   First, in June 2007, the U.S. Senate Permanent Subcommittee on Investigations ("PSI") issued a report on speculation in natural gas, describing Amaranth Advisors' futures trading positions, trading strategy and corporate structure, information on which Plaintiffs relied in the Complaint.[6]  *See, e.g.*, Compl. ¶ 4.  Second, on July 25, 2007, the CFTC filed a complaint **solely** against Amaranth Advisors and Mr. Hunter under the CEA for **attempted manipulation** of the settlement price of the expiring NG contract on February 24 and April 26, 2006.[7]  Plaintiffs rely on allegations in the CFTC's complaint (in fact, they copied paragraphs word-for-word), as well as exhibits attached thereto.  *See, e.g.*, Compl. ¶ 5a.  Third, Plaintiffs rely on the Federal Energy Regulatory Commission's ("FERC") July 26,

---

[6] The PSI did not find that Amaranth Advisors either attempted to or actually manipulated the natural gas futures market.  *See Excessive Speculation in the Natural Gas Market: U.S. Senate Permanent Subcomm. on Investigations Staff Report With Additional Minority Views*, 110th Cong. (June 25, 2007) *available at* http://hsgac.senate.gov/public/_files/REPORTExcessive SpeculationintheNaturalGasMarket0.pdf.

[7] *See U.S. Commodity Futures Trading Comm'n v. Amaranth Advisors, L.L.C., et al.*, Case No. 07-cv-06682 (S.D.N.Y., filed on July 25, 2007).   Amaranth Advisors and Mr. Hunter filed motions to dismiss in that matter, which are pending.  The CFTC did not allege attempted or actual manipulation of the contract prices of the 72 contracts at issue herein in their complaint.

2007 Order to Show Cause, which alleges manipulation of NG futures settlement prices.[8]  *See*, *e.g.*, Compl. ¶ 5b.  Finally, Plaintiffs rely on trading data produced by Amaranth Advisors to the CFTC and the FERC that Plaintiffs obtained from the FERC on October 14, 2007.  Therefore, Plaintiffs have had the benefit of extensive and detailed pre-Complaint information and had the opportunity to amend their Complaint after obtaining this information.  Accordingly, the Complaint should be dismissed with prejudice.  *See Treppel v. Biovail Corp.*, No. 03 CIV 3002, 2005 WL 2086339, at *12 (S.D.N.Y. Aug. 30, 2005) (finding "leave to amend would be futile because plaintiff has already had two bites at the apple and they have proven fruitless").

<u>Argument</u>

## I.    <u>PLAINTIFFS LACK STANDING TO ASSERT CLAIMS BASED ON MANIPULATION OF SETTLEMENT PRICES</u>

Plaintiffs allege that Defendants manipulated the *settlement prices* of the March, April and May 2006 NG contracts on February 24, March 29 and April 26, respectively, in violation of Section 9(a) of the CEA.[9]  (Compl. ¶¶ 2e, 5, 50, 118, 125, 144).  Under Section 22(a) of the CEA, in order properly to assert this claim, Plaintiffs must allege that they and Amaranth Advisors were involved in one of the following four courses of conduct:

1)    they received trading advice from defendants for a fee;

---

[8] The FERC's action is pursuant to the Energy Policy Act, not the CEA, and Amaranth Advisors strongly dispute the FERC's jurisdiction as the CFTC has exclusive jurisdiction over futures markets under the CEA.  Whether FERC is invading the CFTC's exclusive jurisdiction is currently before the Court of Appeals for the D.C. Circuit.  *See Amaranth Advisors, L.L.C.*, *et al.*, *v. FERC* (D.C. Cir. Dec. 6, 2007) (No. 07-1491).

[9] Plaintiffs also cite CEA Sections 6(c) and 6(d) in their manipulation count, but there is no private right of action under those sections—only the CFTC (or the "Commission") can bring claims under those sections.  *See* 7 U.S.C. § 9 (Section 6(c) discussing the ability of the "Commission" to bring an action for actual or attempted manipulation); 7 U.S.C. § 13(b) (Section 6(d) discussing the ability of the "Commission" to enter a cease-and-desist order against any person engaged in actual or attempted manipulation).  *See also* the Master Fund's brief at Section I(A).

2)      they made, through the defendants, any contract or sale of any commodity for future delivery or deposited money with the defendants for such purpose;

3)      they purchased from or sold to the defendants or placed through such person an order for the purchase or sale of an option, a contract, or an interest in a commodity pool; or

4)      they purchased or sold a contract if the violation constitutes a manipulation of the price of any such contract or the price of the commodity underlying such contract.

CEA § 22(a)(1)(A-D); *see also Kolbeck v. LIT Am., Inc.*, 923 F. Supp. 557, 566 (S.D.N.Y. 1996). The only arguably applicable provision is the last, providing a private cause of action where the alleged violation "constitutes a manipulation of the *price of any such contract* or the *price of the commodity* underlying such contract." 7 U.S.C. § 25(a)(1)(D) (emphasis added). The settlement price of an expiring contract is not, however, the price of any such contract or the commodity. Accordingly, Section 22(a)(1)(D) does not provide a private right of action for manipulation of settlement prices, and Plaintiffs lack standing to assert such a claim.

The court's decision in *Vitanza v. Bd. of Trade of the City of New York*, No. 00-cv-7393, 2002 WL 424699 at *4-5 (S.D.N.Y. Mar. 18, 2002), is directly on point. In *Vitanza*, the plaintiffs asserted a CEA claim based on alleged manipulation of settlement prices of P-Tech futures and options. *Id.* The court dismissed the claims for lack of standing, holding that the "settlement price is not the value of the contract itself or the value of the commodity underlying the contract" necessary for standing under Section 22(a)(1)(D). *Id.* at *5. Although recognizing that settlement prices are an aspect of a commodities market, the court dismissed the manipulation claim because the claim was based on settlement prices, rather than actual contract prices, explaining that the court was "extremely reluctant to imply a private right of action where the statute explicitly provides a different remedy." *Id.* (citing *Middlesex County Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 15 (1981)). In fact, Amaranth Advisors is not aware of

any court upholding a private action by a trader against another trader under the CEA based on an the alleged manipulation of settlement prices.

As in *Vitanza*, virtually all of Plaintiffs' factual allegations relate solely to manipulation of three settlement prices, and thus do not meet the requirements of Section 22(a)(1)(D). Plaintiffs do not, and cannot, allege that they or anyone traded at the three allegedly manipulated settlement prices, because settlement prices are determined *after* all trading at contract prices ceases. Therefore, Plaintiffs' CEA settlement price manipulation claims must be dismissed.

## II.    PLAINTIFFS FAIL TO ALLEGE FACTS SUPPORTING A PRIMARY MANIPULATION VIOLATION UNDER THE CEA

"[M]anipulation cases generally have not fared well with either the CFTC or the courts." *In re Soybean Futures Litig.*, 892 F. Supp. 1025, 1043 (N.D. Ill. 1995) (citations omitted). In fact, manipulation is not defined in the CEA; "[t]hat task has fallen to case-by-case judicial development." *In re Indiana Farm Bureau Coop. Assoc., Inc.*, CFTC No. 75-14, 1982 WL 30249, at *3 (CFTC Dec. 17, 1982). The elements of manipulation under CEA Section 9(a)(2) are: (1) the defendant had the ability to influence market prices; (2) an artificial price existed; (3) the defendant caused the artificial price; and (4) the defendant specifically intended to cause the artificial price. *In re Crude Oil Commodity Litig.*, No. 06 Civ. 6677, 2007 WL 1946553, at *3 (S.D.N.Y. June 28, 2007). The Complaint fails adequately to allege these elements under either Rule 9(b) or 8(a).

### A.    Rule 9(b) applies to Plaintiffs' Manipulation Claim

Rule 9(b) mandates that "all averments of fraud" be pled with particularity. FED. R. CIV. P. 9(b). In *Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004), the Second Circuit held that Rule 9(b) "is not limited to allegations styled or denominated as fraud or expressed in terms of the constituent elements of a fraud cause of action." Rather, Rule 9(b) is broader and applies to

"claims insofar as the claims are premised on allegations of fraud." *Id.* As the Supreme Court explained, manipulation refers to fictitious or otherwise deceptive trading practices "that are intended to mislead investors by artificially affecting market activity." *Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 476 (1977). Rule 9(b) applies because Plaintiffs allege that Defendants' large volume trading deceived the market as to the true value, supply and demand of natural gas.

Indeed, this District has applied Rule 9(b) to CEA manipulation claims. *See In re Natural Gas Commodity Litig.*, 358 F. Supp. 2d 336 (S.D.N.Y. 2005) ("*Natural Gas II*"); *Crude Oil*, 2007 WL 1946553 at *1. The Court in *Natural Gas II* held that Rule 9(b) applied because "a complaint that sounds in fraud must comply with Rule 9(b)[] even if [it] does not allege a cause of action requiring proof of fraud." *Natural Gas II*, 358 F. Supp. 2d at 343 (finding the alleged manipulation was "classically associated with fraud"). In a prior decision, the court quoted the Seventh Circuit which, in an action brought by the CFTC, classified "manipulation as a 'species of fraud'." *In re Natural Gas Commodity Litig.*, 337 F. Supp. 2d 498, 509 (S.D.N.Y. 2004) ("*Natural Gas I*") (quoting *Slusser v. CFTC*, 210 F.3d 783, 786 (7th Cir. 2000)).[10]

In *Crude Oil,* the court dismissed the plaintiff's claim alleging manipulation of futures contracts in violation of Section 9(a)(2) of the CEA for failure to comply with Rule 9(b). Notwithstanding that the plaintiffs, like Plaintiffs herein, had "carefully avoided the word 'fraud' in their complaint," the court found that because the "crux of plaintiffs' allegations is that defendants misled the market with regard to supply and demand," the manipulation claim was subject to Rule 9(b)'s heightened pleading requirements. *Crude Oil*, 2007 WL 1946553 at *5.

---

[10] The Court in *Natural Gas II* commented that in a prior decision (*Natural Gas I*) it analyzed the Complaint under Rule 8, not Rule 9(b), as no party argued in the earlier decision that Rule 9(b) governed. *See Natural Gas I,* 337 F. Supp. at 509; *Natural Gas II*, 368 F. Supp. 2d at 342.

Moreover, in the securities context, the Second Circuit recently concluded, "[b]ecause a claim for market manipulation is a claim for fraud, it must be pled with particularity under Rule 9(b)." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 101 (2d Cir. 2007). It reasoned,

> case law in this circuit and elsewhere has required a showing that an alleged manipulator engaged in market activity aimed at deceiving investors as to how other market participants have valued a security. The deception arises from the fact that investors are misled to believe that prices at which they purchase and sell securities are determined by the natural interplay of supply and demand, not rigged by manipulators.

*Id.* at 100 (citations omitted).

Consistent with the above cases, as the Complaint purports to allege a deception on the market throughout the Class Period as to the true supply and demand for NG contracts, Plaintiffs' manipulation claim under the CEA is subject to the heightened pleading requirements of Rule 9(b). *See* Compl. ¶¶ 78, 81d, 82d.

### 1. Under Rule 9(b), Plaintiffs Must Allege Facts Justifying A Strong Inference Of Manipulative Intent

Under Rule 9(b), Plaintiffs must allege facts raising a strong inference of manipulative intent. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, --- U.S. ---, 127 S. Ct. 2499 (2007). In *Tellabs*, the Supreme Court instructed courts to "take into account plausible opposing inferences" when determining whether a plaintiff has alleged facts that give rise to a strong inference of scienter. *Id.* at 2509. The Supreme Court stated that:

> [T]he inference of scienter must be more than merely 'reasonable' or 'permissible' -- it must be cogent and compelling, thus strong in light of other explanations. A complaint will survive, we hold, only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged.

*Id.* at 2510.[11] As discussed more fully below, Plaintiffs fail to meet this standard.

---

[11] Although *Tellabs* addressed claims governed by the Private Securities Litigation Reform Act ("PSLRA"), courts have applied *Tellabs*' heightened scienter requirement to non-PSLRA fraud

2. **Even Under Rule 8, Plaintiffs' Vague and Conclusory Group Allegations Are Not Adequate**

Alternatively, to withstand a motion to dismiss under Rule 8, a complaint must allege facts sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, --- U.S. ---. 127 S. Ct. 1955, 1965 (2007). In particular, the Supreme Court requires a complaint to set forth "plausible" grounds for relief, not just the mere possibility that a plaintiff may ultimately succeed. *Id.* at 1965-68.

Although on a motion to dismiss the Court must accept *factual* allegations in the Complaint as true, it need not and should not accept conclusory statements unsupported by assertions of fact. *See Smith v. Local 819 I. B. T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002) ("conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss") (citations omitted); *see also B. H. Papasan v. Allain*, 478 U.S. 265, 286 (1986) ("we are not bound to accept as true a legal conclusion couched as a factual allegation"). Thus, vague or conclusory allegations will not be sufficient to withstand a motion to dismiss. *See Vitanza*, 2002 WL 424699 at *2.

B. **The Complaint Fails To Allege Manipulative Conduct**

Plaintiffs' Complaint rests on the theory that because of its large trading positions, Amaranth Advisors allegedly manipulated the prices of all 72 NG contracts during the Class Period. But large trading alone does not constitute manipulative conduct in this Circuit. For an act to constitute manipulation, the conduct "must be willfully combined with something more to

---

claims. *See, e.g., Crude Oil*, 2007 WL 1946553 at *7 n.5 (applying Rule 9(b) to a CEA manipulation claim, stating that the "adoption of a heightened pleading standard in the context of the claims presented herein is in conformity with the direction of the Court" in *Tellabs*).

create a false impression of how market participants value a security." *ATSI*, 493 F.3d at 101.[12]

[T]he essential element of [a manipulation] claim is that *inaccurate* information is being injected

into the marketplace." *GFL Advantage Fund v. Colkitt*, 272 F. 3d 189, 204-05 (3d Cir. 2001)

(emphasis in original) (citations omitted). Therefore, "market manipulation requires an

additional element, something beyond otherwise legal trading. . . ." *Id.* at 205 (citations

omitted).

Accordingly, manipulation cases under the CEA typically allege that a defendant either

made false or misleading statements to affect market prices or engaged in deceptive trading

practices, such as wash sales, matched orders, rigged bids, fictitious trades, corners or squeezes.

For instance, in *Natural Gas I*, defendants allegedly submitted false price and volume

information to gas industry publications with the goal of artificially skewing the published

reports regarding the natural gas physical market, and thereby artificially altered the natural gas

market. 337 F. Supp. 2d at 503. In *Transnor (Bermuda) Ltd. v. BP N. Am. Petroleum*, 738 F.

Supp. 1472, 1493-96 (S.D.N.Y. 1990), the alleged manipulative conduct in violation of the CEA

included wash sales. *See also Cargill, Inc. v. Hardin*, 452 F.2d 1154, 1164-72 (8th Cir. 1971)

(dominant long position allegedly used to engage in a manipulative squeeze); *CFTC v. Reed*, 481

F. Supp. 2d 1190, 1200 (D. Colo. 2007) (alleged manipulation included numerous acts of false

reporting natural gas physical trades); *CFTC v. Atha*, 420 F. Supp. 2d 1373, 1381 (N.D. Ga.

2006) (defendants allegedly made up fictitious counterparties to their transactions and fabricated

price and volume reports); *CFTC v. Johnson*, 408 F. Supp. 2d 259, 266-68 (S.D. Tex. 2005)

---

[12] Cases interpreting the securities laws are applicable in evaluating CEA claims. *See Miller v. N.Y. Produce Exch.*, 550 F.2d 762, 769 n.4 (2d Cir. 1977) (in context of alleged CEA manipulation claim the court applied the reasoning of securities cases); *Mormels v. Girofinance, S.A.*, 544 F. Supp. 815, 817 n.8 (S.D.N.Y. 1982) ("Securities cases and principles are used as persuasive aids to interpretation of the [CEA].") (citations omitted).

(defendants allegedly submitted biased trade information and fictitious gas trades with the intent to affect prices); *CFTC v. Bradley*, 408 F. Supp. 2d 1214, 1220 (N.D. Okla. 2005) (defendants allegedly fabricated transaction information for the purpose of manipulating prices); *In the Matter of Avista Energy, Inc. & Michael T. Griswold*, CFTC No. 01-21, 2001 WL 951736, at *2, 10 (CFTC Aug. 21, 2001) (alleged scheme to manipulate prices by selling futures contracts below prevailing bids and purchasing them higher than prevailing bids with no apparent business or economic rationale).  In fact, Amaranth Advisors is not aware of any case in this Circuit finding manipulation based solely on large, open-market trading.

Indeed, last year, in *ATSI*, the Second Circuit affirmed dismissal of a complaint alleging market manipulation based on high-volume short-selling that allegedly resulted in a substantial decline in stock price.  493 F.3d 87 (2d Cir. 2007).  The Second Circuit refused to infer manipulation from trading patterns and anomalous stock fluctuations, which were too speculative to state a claim.  *Id.* at 102-03.  The Court emphasized that "short selling – even in high volumes – is not by itself manipulative . . . to be actionable as a manipulative act, short selling must be willfully combined with something more to create a false impression of how market participants value a security."  *Id.* at 101 (citations omitted); *see Nanopierce Technologies, Inc. v. Southridge Capital Mgmt.*, 02 Civ 0767, 2008 WL 250553, at *3 (S.D.N.Y. Jan. 28, 2008) (finding that the "Second Circuit has spoken clearly about the principle that '[a] strong inference of scienter [sufficient to defeat a motion to dismiss] is not raised by alleging that a legitimate investment vehicle . . . creates an opportunity for profit through manipulation.") (*citing ATSI*, 493 F.3d at 104).  *See also GFL*, 272 F.3d at 207, 211 (rejecting a manipulation claim based on an alleged scheme to depress stock prices through concentrated short sales as "[t]he fact that these short sales may have contributed to a decline in the stocks' prices is not evidence of deceptive or

manipulative conduct"; a plaintiff has to "present evidence that [a defendant] engaged in some other type of deceptive behavior in conjunction with its short selling that either injected inaccurate information into the marketplace or created artificial demand for the securities") (citations omitted); *U.S. v. Mulheren,* 938 F.2d 364, 370-72 (2d Cir. 1991) ("the fact that [defendant] dominated the [open] market between 9:30 a.m. and 11:10 a.m. . . carries little weight" in establishing manipulation without something more, *i.e.*, wash sales, matched orders or fictitious accounts); *Sullivan & Long, Inc. v. Scattered Corp.*, 47 F.3d 857, 864 (7th Cir. 1995) ("unprecedented massive short selling" did not create "a false impression of supply or demand" because there were "real buyers, betting against [defendant]"); *In re Olympia Brewing Co. Sec. Litig.,* 613 F. Supp. 1286, 1289, 1296 (N.D. Ill. 1985) (dismissing manipulation claim based on "short sales at end of the trading days" because "short selling is simply not unlawful, even in large numbers and even if the trading does negatively affect the purchase price").

In stark contrast to this consistent line of both CEA and securities manipulation cases, the manipulation alleged here amounts to nothing more than legitimate trading. The Complaint does not allege false reporting, wash sales, conspiracy, sales below prevailing bids or any other deceptive activity. Thus, Plaintiffs' manipulation claim therefore should be dismissed. *See, e.g., In re College Bound Consol. Litig.*, No. 93 Civ. 2348, 1995 WL 450486, at *5-7 (S.D.N.Y. July 31, 1995) (dismissing claim based on open-market trading at end of the trading day because such trading is neither illegal nor deceptive).

### C.     The Complaint Fails To Allege Intent To Manipulate The Market Under Either Rule 9(b) or 8(a)

Intent is the essence of manipulation. *See In re Indiana Farm Bureau*, 1982 WL 30249 at *4; *In re Hohenberg Bros.*, CFTC No. 75-4, 1977 WL 13526, at *7 (CFTC Feb. 18, 1977). Under either Rule 9(b) or Rule 8, allegations of general intent are not sufficient. Critically,

"specific intent to create an 'artificial' or 'distorted' price is a *sine qua non* of manipulation."  *In re Indiana Farm Bureau*, 1982 WL 30249 at *5.  To demonstrate specific intent, Plaintiffs must show that the defendant acted "with the purpose or conscious object of causing or effecting a price that . . . did not reflect the legitimate forces of supply and demand."  *See CFTC v. Johnson,* 408 F. Supp. 2d at 267.  In addition, the conduct must be calculated to produce a price distortion.  *See Volkart Bros., Inc. v. Freeman*, 311 F.2d 52, 58 (5th Cir. 1962).  Moreover, where a trader acts with a legitimate investment or commercial purpose, no manipulative intent can be found.  *See Transnor*, 738 F. Supp. at 1495; *see also Crude Oil,* 2007 WL 1946553 at *8 (the generalized motive that defendants had a large presence in the crude oil market and the NYMEX futures and options market, and also engaged in the purchase and sale of over-the-counter contracts and thus stood to gain from their dealings in crude oil by manipulating prices, could be imputed to any corporation with a large market presence in any commodity market and thus is insufficient to show intent).

## 1.    Plaintiffs Fail To Allege Facts Justifying A Strong Inference Of Manipulative Intent As Required Under Rule 9(b)

Plaintiffs cite no facts supporting their conclusory allegations (*see* Compl. at ¶ 176) that Amaranth Advisors intended to manipulate all 72 NG contracts at every moment in time during the seven-month Class Period.  Plaintiffs rely on a few isolated instant messages ("IMs") regarding just *three days* during the seven-month Class Period.  All that is alleged, and all that the IMs show, is that on the settlement days for three contracts, February 24, March 29, and April 26, 2006, lawful trades were made that the traders hoped would be profitable.  This evidence is wholly insufficient to satisfy Plaintiffs' pleading burden as to Amaranth Advisors' alleged manipulation of 72 contracts during a seven-month period.  *See ATSI*, 493 F.3d at 104 ("A strong inference of scienter is not raised by alleging that a legitimate investment vehicle . . .

creates an opportunity for profit through manipulation.") (citations omitted); *see also In re Pfizer, Inc. Sec. Litig.*, No. 06 Civ. 14199, 2008 WL 540120, at *7 (S.D.N.Y. Feb. 28, 2008) ("general allegations that the defendants acted in their economic self-interest" are insufficient) (citations omitted). The Complaint's purported inference of scienter as to an alleged manipulation of 72 contracts during a seven-month period is not as compelling as any opposing inference (*i.e.* legitimate, open market trading) one could draw from the facts alleged, thereby compelling dismissal under *Tellabs*. 127 S. Ct. at 2510.

### a.    The Class Period In General

In a futile attempt to allege intent to manipulate natural gas futures throughout the Class Period, Plaintiffs cite allegedly "large" natural gas positions held by Amaranth Advisors and how the positions changed throughout the Class Period. *See, e.g.*, Compl. ¶¶ 2a-c, 3a-d, 63-72. As discussed previously, there is nothing inherently illegal or manipulative about "large" futures positions. *See Crude Oil*, 2007 WL 1946553 at *8 (the generalized motive that defendants stood to gain from their dealings in crude oil by manipulating futures prices could be imputed to any corporation with a large market presence and thus is insufficient to show intent).

Moreover, the vast majority of the allegations as to a purported manipulative scheme throughout the Class Period lump all the defendants together as "Amaranth" or the "Amaranth Defendants." Such group allegations are insufficient under Rule 9(b). *See In re Blech Sec. Litig.*, 928 F. Supp. 1279, 1292-93 (S.D.N.Y. 1996) ("Particular requirements spring from Rule 9(b) where a complaint is made against multiple defendants" such as that "the complaint may not rely upon blanket references to acts or omissions by all of the defendants, for each defendant named in the complaint is entitled to be apprised of the circumstances with which he individually stands charged.") (citations omitted); *Ellison v. Am. Image Motor Co., Inc.*, 36 F. Supp. 2d 628, 640 (S.D.N.Y. 1999) (dismissing market manipulation claims against certain defendants for

failure to comply with Rule 9(b), stating that Rule 9(b) is "not satisfied by a complaint in which defendants are clumped together in vague allegations") (citations omitted); *Manela v. Gottlieb*, 784 F. Supp. 84, 87-88 (S.D.N.Y. 1992) (dismissing complaint where "many of the allegations [we]re made against multiple defendants lumped together" and plaintiff's allegations did not "address actions taken or statements made" with the requisite specificity).

Therefore, the inference of legitimate trading from the Class Period allegations is more compelling than that of manipulative intent, and there is certainly not a cogent or even plausible basis to infer intent. Thus, the Complaint should be dismissed for failure to satisfy Rule 9(b).

### b.    February 24, 2006

Recognizing the implausibility of their manipulation claims as to the Class Period, Plaintiffs selectively quote from various IM conversations in an attempt to show an intent to manipulate the settlement price of the expiring contract on February 24, March 29, and April 26, 2006. As discussed above, Plaintiffs do not have standing to bring such claims. Even assuming they did, the IMs do not establish the requisite manipulative intent of the individual IM participants for manipulation, let alone of Amaranth Advisors.

Among the quotes cited by Plaintiffs are that Mr. Hunter needed March NG contracts to "get smashed," *i.e.* for prices to fall fast; that Mr. Hunter needed "lots of futures" to sell; and that Mr. Hunter said "today came together quite nicely" at the end of the day on February 24, 2006. (Compl. ¶¶ 106, 109-110). The Complaint does not explain why or how these IMs demonstrate a specific intent to create an artificial price by any Defendant, let alone by Amaranth Advisors. Moreover, neither this or any other IM referred to contains an admission of manipulative intent or any language that could be interpreted to imply such intent. Indeed, read in context, these IMs demonstrate that Mr. Hunter was executing a trading strategy based on recent price movements.

For example, Mr. Hunter wanted to have "lots of futures" to sell on February 24 because of "big changes" in pricing on February 23 and large volume buying by another market participant. *See* Mollón Dec. Ex. B.[13]    Further, a review of the complete IM regarding the market getting "smashed" indicates nothing more than Mr. Hunter and Matthew Calhoun, another trader on the natural gas desk, discussing market conditions and the potential impact on their positions.  This is evident from Mr. Hunter's comment the same day that there was "pain everywhere" in the market that day.  *See* Mollón Dec. Ex. C.  Additionally, the fact that Mr. Hunter commented that "today came together quite nicely" (Compl. ¶ 116) does not support any inference of intent as to Amaranth Advisors.  *See* Mollón Dec. Ex. D.  There is nothing nefarious about discussing the profit and loss for the day, typical conversation among traders.

Therefore, in the language of the Supreme Court, the "cogent" and more "compelling" inference from the February 24, 2006 IMs is that Mr. Hunter thought prices might increase, not that he engaged in any scheme to manipulate prices.  *Tellabs*, 127 S. Ct. at 2510.  There are insufficient allegations to establish intent by Amaranth Advisors to manipulate the settlement price of the March NG contract on February 24, 2006.

---

[13] For purposes of a motion to dismiss, a complaint is deemed to include "any ... statements or documents incorporated into [it] by reference ... and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit."  *In re Initial Public Offering Sec. Litig.*, No. 21 MC 92 (SAS), 2008 WL 819762, at *3 (S.D.N.Y. Mar. 26, 2008) (Scheindlin, J.) (citations omitted).  Plaintiffs specifically referenced and relied upon in their Complaint all of the documents cited in and attached to this memorandum of law.  Thus, this Court may consider them without turning this motion into a motion for summary judgment.  *See Chambers v. Time Warner, Inc*., 282 F.3d 147, 152-53 (2d Cir. 2002).

### c.    March 29, 2006

Plaintiffs' allegations regarding intent to manipulate the settlement price on March 29, 2006 are especially lacking.[14]  Plaintiffs simply allege that "Amaranth held a large long position in the April 2006 contract prior to the settlement period, and proceeded to sell it [market on close] during the close."  (Compl. ¶ 122).  This is nothing more than legitimate trading and does not show any intent to manipulate.  In fact, as Plaintiffs concede, Amaranth Advisors sold over 400 April 2006 contracts on March 29, 2006, *before the settlement period*; and then, during the settlement period, they sold an additional 1,200 contracts, merely demonstrating that Amaranth Advisors was an active trader *throughout* the trading day. (Compl. ¶ 123).

Further, any attempt to base intent on Amaranth Advisors' short April swap position and that they "stood to benefit from a lowered natural gas futures contract price" also fails. (Compl. ¶ 124).  These allegations suggest nothing about intent and simply describe legitimate trading.  *See In re Olympia Brewing Co.*, *Sec. Litig.,* 613 F. Supp. at 1289, 1296 (dismissing manipulation claim based on "short sales at the end of the trading days" because "short selling is simply not unlawful, even in large numbers and even if the trading does negatively affect the purchase price").  Indeed, presumably half the market was short and stood to benefit from lower prices.

### d.    April 26, 2006

With respect to April 26, 2006, Plaintiffs assert that Amaranth Advisors obtained a large long NG futures position in order to sell it in the last half-hour of trading.  (Compl. ¶ 127).  Again, even if this is true, this describes nothing more than lawful trading.  Indeed, the Complaint alleges that Amaranth Advisors' strategy was driven, in part, by a concern that

---

[14] The CFTC, the governmental agency charged with regulating futures markets, did not allege that any of the Defendants named in this action even attempted to manipulate the settlement price of the April 2006 NG contract.  *See U.S. Commodity Futures Trading Comm'n v. Amaranth Advisors, L.L.C., et al.*, Case No. 07-cv-06682 (S.D.N.Y., filed on July 25, 2007).

another hedge fund was going to be a large buyer of NG contracts near the close. (Compl. ¶¶ 131-133). Further, the Complaint asserts that Mr. Hunter thought other buyers existed and thus he was waiting to sell. (Compl. ¶¶ 135-36). Far from suggesting any manipulative conduct, the Complaint itself reflects a legitimate business response to the anticipated actions of other traders.

The Complaint makes much of the fact that "Amaranth" waited until the last eight minutes of trading on April 26 to sell NG contracts. (Compl. ¶¶ 138-43). Importantly, however, Plaintiffs do not, and could not, allege that there is anything inherently improper about selling near the end of the close. *See In re College Bound Consol. Litig.*, 1995 WL 450486 at *5-7 (dismissing claim based on open-market trading at end of trading day because such trading is neither illegal nor deceptive). The more compelling inference, given that the trading lacked any deceptive techniques, is that no specific intent existed to manipulate the market. Rather, Amaranth Advisors was implementing a legitimate trading strategy based on its analysis of the market. The facts on which Plaintiffs seek to rely simply do not provide a compelling basis to infer manipulative intent as to Amaranth Advisors.

### 2. Plaintiffs Have Not Sufficiently Plead Intent To Comply With Rule 8

The Complaint does not allege any direct evidence of an intent by Amaranth Advisors to create artificial market prices. The Complaint also fails to set forth sufficient circumstantial evidence from which to infer such intent. The Complaint merely states in a conclusory fashion that "[e]ach Amaranth Defendant or its control person or agent specifically intended their activities alleged herein to move or support the prices of NYMEX natural gas contracts to or at artificial prices" and that "Amaranth's manipulation of the prices of the NYMEX NG Contracts during settlement was intended to benefit Amaranth's substantially larger short natural gas swaps positions on ICE and elsewhere." (Compl. ¶¶ 239, 103). Such conclusory group pleading is insufficient to state a claim. The most Plaintiffs have done is cite a few isolated IMs regarding

-20-

three specific trading days, which do not provide any plausible basis for the scheme alleged *throughout* the entire Class Period.

### D.    The Complaint Fails To Allege The Ability To Manipulate The Market

The Complaint lacks sufficient allegations that Amaranth Advisors had the ability to manipulate the natural gas futures market.  In determining whether a trader has the ability to manipulate prices, courts look at whether traders were forced to trade with the alleged manipulator.  In this regard, the CFTC has observed the following:

> When analyzing the ability of the accused to influence market prices, we must recognize that there are two ways to satisfy futures obligations; offset in the futures market or delivery of the underlying commodity. ***The accused lacks the ability to influence prices if other market participants can bypass his demands and extinguish their obligations elsewhere.***

*In re Cox*, 1987 CFTC LEXIS 325, at *11 (CFTC July 15, 1987) (emphasis added); *see also In re Indiana Farm Bureau*, 1982 WL 30249 at *8 ("[W]ithout the ability to force shorts to deal with him either in the cash or futures market, the [long] manipulator is not able to successfully dictate prices because a short may buy grain from other sources and deliver against his commitments.").  The Complaint contains no allegations that market participants *had* to trade with Amaranth Advisors.  Accordingly, Plaintiffs have not pled that any Defendants, let alone Amaranth Advisors, had the ability to influence prices.

Indeed, the Seventh Circuit has recognized the difficulty of manipulating the futures market for a commodity without also gaining control over the physical market or the "deliverable supply."  *Bd. of Trade v. SEC*, 187 F.3d 713, 724-25 (7th Cir. 1999).  In *Board of Trade*, the Seventh Circuit reasoned that absent such control, "there can never be a mismatch between demand and supply near the expiration, or at any other time."  *Id.* at 725.  Nowhere in the Complaint do Plaintiffs allege, nor could they, that any Defendant had control over or even a deliverable supply of physical natural gas.

Plaintiffs' theory appears to be that Amaranth Advisors had the ability to cause artificial prices by virtue of their allegedly large futures positions. Some courts consider the size of a trader's positions relative to existing open interest at the time of the alleged manipulation, finding positions in the 50 percent to 70 percent range possibly to be evidence of an ability to manipulate prices. *See, e.g., Cargill*, 452 F.2d at 1164 ("On its face, ownership of 62 percent of the open contracts would appear to be a dominant interest."). Here, however, other than reciting the number of Amaranth Advisors' positions, the only such allegations made by Plaintiffs are that "Amaranth controlled 40% of all of the outstanding contracts on NYMEX for October 2006 through March 2007" and "more than 50% of the open interest on NYMEX in the January 2007 and November 2006 NYMEX natural gas futures contracts." (Compl. ¶¶ 66-67). Plaintiffs make no allegations regarding open interest with respect to any of the remaining 66 NG contracts allegedly manipulated during the Class Period. Thus, the Complaint fails to plead properly the ability to manipulate all 72 NG Contracts throughout the entire Class Period.

### E.  The Complaint Fails To Allege Amaranth Advisors Caused Artificial Prices

Plaintiffs merely allege in a conclusory manner that "Amaranth intentionally caused artificial prices for all NYMEX natural gas contracts and artificial spreads throughout the Class Period" (Compl. ¶ 178), allegations that are insufficient to state a claim. *See Manela*, 784 F. Supp. at 87-88 (dismissing complaint where "many of the allegations [we]re made against multiple defendants lumped together" and plaintiff's allegations did not "address actions taken or statements made" by the moving defendants with the requisite specificity). Plaintiffs attempt to allege that "Amaranth" caused artificial prices for 72 NG contracts over seven months without any factual basis regarding how "Amaranth" caused artificial prices for these contracts. Plaintiffs' causation allegations are conclusory and insufficient to sustain a manipulation claim for the entire Class Period.

III.  **PLAINTIFFS' SECONDARY LIABILITY CLAIMS MUST BE DISMISSED FOR FAILURE TO PLEAD SUFFICIENT FACTS OR BECAUSE PLAINTIFFS LACK STANDING TO ASSERT THE CLAIMS**

A.  **Plaintiffs Plead Insufficient Facts Supporting An Aiding And Abetting Manipulation Claim**

Plaintiffs' claim against Amaranth Advisors for allegedly aiding and abetting manipulation by the "Amaranth Defendants" (Compl. ¶¶ 244, 246-49) must be dismissed for failure to allege the requisite elements with the particularity mandated under Rule 9(b)[15] and/or for failure to set forth "plausible" grounds for relief under *Twombly*, 127 S. Ct. at 1965. To plead a CEA claim for aiding and abetting, Plaintiffs must show: (1) a manipulation in violation of the CEA; (2) Defendants' knowledge of the principal's intent to commit the manipulation; (3) Defendants' intent to further that violation; and (4) the Defendants lent substantial assistance to the primary violators in committing the primary violation.[16]  *Krause v. Forex Exch. Mkt., Inc.*, 356 F. Supp. 2d 332, 338 (citations omitted). Plaintiffs do not meet their burden.

First and foremost, the Complaint merely alleges that each Defendant aided and abetted a manipulation violation under the CEA by the "Amaranth Defendants." (Compl. ¶¶ 244-249, 251, 252). Courts have consistently held such conclusory group pleading as insufficient under Rule 9(b). *See Ellison*, 36 F. Supp. 3d at 640 (dismissing market manipulation claims against

---

[15] As Rule 9(b) applies to Plaintiffs' manipulation claim, it also applies to the aiding and abetting manipulation claim. *See Krause v. Forex Exch. Mkt., Inc.*, 356 F. Supp. 2d 332, 339 n.50 (S.D.N.Y. 2005) (stating that where the primary violations upon which the aiding and abetting claims are based sound in fraud and are subject to the requirement of Rule 9(b), Rule 9(b) also applies to the claims of aiding and abetting fraud) (*citing Armstrong v. McAlpin*, 699 F.2d 79, 92 (2d Cir. 1983)).

[16] The memoranda of law filed by other Defendants demonstrate that Plaintiffs have failed to allege manipulation in violation of the CEA against any Defendant. Thus, Plaintiffs' aiding and abetting claim against Amaranth Advisors must also fail. *See Tatum v. Legg Mason Wood Walker, Inc.*, 83 F. 3d 121, 123 n.3 (5th Cir. 1996) ("Because we hold that Plaintiffs have not stated a claim against [the primary actor] under the [CEA], we must also necessarily hold that Plaintiffs have not stated a claim against [the secondary actor] for 'aiding and abetting' liability.") (citations omitted).

certain defendants for failure to comply with Rule 9(b), stating that Rule 9(b) is "not satisfied by a complaint in which defendants are clumped together in vague allegations.") (citations omitted).

Plaintiffs also fail to plead sufficient facts demonstrating the requisite knowledge. Under the CEA, courts require actual knowledge or "specific unlawful intent." *See In re Richardson Sec., Inc.*, Comm. Fut. L. Rep. (CCH) 21,145, at 24,642-46 (CFTC Jan. 27, 1981) (Mollón Dec. Ex. A). "[P]roof of a specific unlawful intent to further the underlying violation is necessary before one can be found liable for aiding and abetting a violation of the [CEA]." *Id.* at 24,642; *see also Damato v. Hermanson*, 153 F.3d 464, 472 (7th Cir. 1998) (a plaintiff "must allege that the aider and abettor acted knowingly"). It is not enough under the CEA that the aider and abettor "know of the principal's violation of law, they must willfully assist in the violation and share the principal's intent." *Benfield v. Mocatta Metals Corp.*, No. 91-CIV-8255 (LJF), 1992 WL 58879, at *6 (S.D.N.Y. Mar. 13, 1992) (citations omitted).

All the Complaint alleges is that Amaranth Advisors knew about its own trading positions. But, as discussed previously, large trading positions are not in and of themselves evidence of manipulative activity. *See Mulheren*, 938 F.2d at 371-72 ("in the absence of other indicia of manipulation . . . the fact that the defendant dominated the market between 9:30 a.m. and 11:10 a.m. . . . carries little weight."). Moreover, Plaintiffs must allege facts demonstrating that Amaranth Advisors specifically intended to assist in a manipulation. *See In re Richardson*, Comm. Fut. L. Rep. (CCH) at 24,642-46. The Complaint fails to meet that burden.

Further, it is not enough that a defendant be aware of a violation. Instead, "it must be shown that the assistance rendered was substantial." *CFTC v. Johnson*, 408 F. Supp. 2d at 268. *See also Benfield*, 1992 WL 58879 at *20. "Substantial assistance exists where the alleged aider and abettor has played an active role in furthering the [] violation." *Thornock v. Kinderhill*

*Corp.*, 749 F. Supp. 513, 516 (S.D.N.Y. 1990). The Complaint contains only vague and conclusory allegations as to actions by Amaranth Advisors. Plaintiffs merely plead that Amaranth Advisors served as the "investment advisor and manager of the Amaranth Defendants" (Compl. ¶ 244), yet Amaranth Advisors served as the investment advisor for only the Master Fund. Moreover, as to Amaranth Advisors (Calgary) ULC, Plaintiffs simply plead they were an "indirect subsidiary of Amaranth Advisors [L.L.C.]" and "allowed the natural gas traders to be based in Calgary." (Compl. ¶ 249). The Complaint does not explain how "allowing" traders to be based in Calgary, a hub for natural gas trading, demonstrates that Amaranth Advisors (Calgary) ULC knowingly provided substantial assistance to a purported manipulation.

**B.     Plaintiffs' CEA Section 2(a)(1)(B) Claim Must Be Dismissed Because Plaintiffs Do Not Allege The Requisite Elements Of An Agency Relationship**

The Complaint utterly fails to state a claim against Amaranth Advisors as principals liable for actions of their alleged agents, the "Amaranth Defendants," under Section 2(a)(1)(B) of the CEA, 7 U.S.C. § 2(a)(1)(B). Section 2(a)(1)(B) creates liability if (1) the violator acted as the other's agent when he engaged in the unlawful activity, and (2) the violator's actions were within the scope of his employment or office. *See Guttman v. CFTC*, 197 F.3d 33, 37 n.6 (2d Cir. 1999). Any attempt to hold Amaranth Advisors liable as a principal for any alleged manipulation by an alleged employee fails, as the alleged employee would have been acting outside the scope of their employment in taking part in such an alleged manipulation.[17]

As an initial matter, a Section 2(a)(1)(B) claim as to manipulation is also subject to Rule 9(b). *See Kolbeck*, 923 F. Supp. at 569. Plaintiffs claim that all Defendants are liable as principals under Section 2(a)(1)(B) for the acts of their agents, the "Amaranth Defendants."

---

[17] If the Court dismissed the manipulation claim, there can be no vicarious liability. *See Kolbeck*, 923 F. Supp. at 570 (dismissing claim against the principal for violation of CEA where plaintiffs failed to adequately allege cause of action against the agent).

Such allegations are universally recognized as insufficient under Rule 9(b). *See id.* ("Broad allegations that several defendants participated in a scheme, or conclusory assertions that one defendant controlled another, or that some defendants are guilty because of their association with others, do not inform each defendant of its role in the fraud and do not satisfy Rule 9(b).") (citations omitted). Indeed, the allegations are so generic that Plaintiffs do not even give fair notice of the grounds for their claims pursuant to Rule 8(a). *See Leibowitz v. Cornell Univ.*, 445 F.3d 586, 591 (2d Cir. 2006); *Ritchie Capital Mgmt., L.L.C. v. Coventry First LLC*, No. 07 Civ. 3494 (DLC), 2007 WL 2044656, at *9-10, n.7 (S.D.N.Y. July 17, 2007) (dismissing claims for failure to give "fair notice" where plaintiffs made allegations against four collective defendants without identifying with specificity the enterprise(s) involved in the violations).

Further, any alleged manipulation would be outside the scope of any Defendant's employment, and thus outside the scope of activity for which anyone can be liable under Section (2)(a)(1)(B). As a general rule, when an employee "departs from the line of his duty so that for the time being his acts constitute an abandonment of his service, the master is not liable." *Judith M. v. Sisters of Charity Hosp.*, 93 N.Y.2d 932, 933 (1999) (citations omitted). *See O'Connor & Assocs. v. Dean Witter Reynolds, Inc.*, 529 F. Supp. 1179, 1194 (S.D.N.Y. 1981) ("Insider trading and tipping cannot ordinarily [be] said to be within the course of employment."); *Moss v. Morgan Stanley, Inc.*, 553 F. Supp. 1347, 1356 (S.D.N.Y. 1983) (same).

In fact, the Second Circuit has held that when an employee breaches its duties to its employer, the employer cannot be held vicariously liable. In *In re Ivan F. Boesky Securities Litigation*, 36 F.3d 255, 265 (2d Cir. 1994), FMC retained Goldman as an advisor for a confidential restructure, which a Goldman vice-president disclosed, causing the cost of the restructuring to increase by $220 million. *Id.* FMC attempted to hold Goldman vicariously

liable for its vice-president's disclosure.  The Second Circuit affirmed dismissal of FMC's claim, finding that the vice-president had a fiduciary duty not to disclose confidential information.  *Id.* at 265.  *See also Scripps v. Smith, Hague & Co., Inc.,* 679 F. Supp. 676, 678 (E.D. Mich. 1988) (denying attempt by stock sellers to hold purchasers vicariously liable for the conduct of their broker, stating that "[a]ny customer seeking to obtain stock has a right to expect his broker to perform professionally and ethically in purchasing shares on the customer's behalf").

Here, any illegal trades would similarly have fallen outside the permissible ambit of employment.  Amaranth Advisors had the right to expect its employees to perform their duties "professionally and ethically" so as not to violate any law or NYMEX trading rule.  Indeed, as Plaintiffs plead, Amaranth Advisors had compliance personnel to ensure that traders were educated as to anti-manipulation practices.  (Compl. ¶¶ 30, 204).  Clearly any unlawful trading activity cannot be said to have been authorized.  Accordingly, any alleged manipulation would have been outside the scope of any employee's employment.

**C.    There Is No Private Right Of Action Under CEA Section 13(b) Or Rule 166.3 And None Of The Defendants Were CFTC Registrants**[18]

Count Two's CEA § 13(b) control person claim must be dismissed as § 13(b) provides that only the CFTC may bring an action thereunder.[19]  7 U.S.C. § 13c(b) (a person who "controls any person who has violated [the CEA] may be held liable for such violation in any action

---

[18] Amaranth Advisors incorporate by reference the arguments made by Mr. Maounis and the Master Fund in support of dismissal of the Section 13(b) and Rule 166.3 claims.

[19] In Count Two, Plaintiffs allege that Amaranth Advisors are liable as a "controlling person" under Section 4b of the CEA, 7 U.S.C. § 6(b), the CEA's anti-fraud provision.  (Compl. ¶ 255).  It appears Plaintiffs have mis-cited Section 4b, but to the extent Plaintiffs intended to assert a claim thereunder, they fail for two reasons.  First, a general fraud on the market is not recognized under Section 4b.  *See Korwek v. Hunt*, 646 F. Supp. 953, 972 (S.D.N.Y. 1986).  Second, Plaintiffs fail to satisfy Rule 9(b).  *See Kolbeck*, 923 F. Supp. at 568.

brought by the Commission").  *See also Michelson v. Merrill Lynch Pierce, Fenner & Smith, Inc.*, 619 F. Supp. 727, 739 (S.D.N.Y. 1995) (finding no private right of action under § 13(b)).

Similarly, Count Two's failure to supervise claim under Rule 166.3, 317 C.F.R. § 166.3, fails as there is no private right of action thereunder.  *See Fustok v. Conticommodity Servs. Inc.*, 618 F. Supp. 1069, 1070 (S.D.N.Y. 1985) (recognizing that Rule 166.3 does not create a private right of action).  Further, Rule 166.3 only applies to CFTC registrants, and Plaintiffs have not (and could not) allege that Amaranth Advisors were CFTC registrants during the Class Period.  17 C.F.R. § 166.3 ("Each Commission registrant . . . must diligently supervise . . . .");  *CFTC v. Commodities Fluctuations Sys., Inc.*, 583 F. Supp. 1382 (S.D.N.Y. 1984) (discussing Rule 166.3's applicability to registrants).  Accordingly, the Rule 166.3 claim should be dismissed.

## IV.    PLAINTIFFS FAIL TO PLEAD THE ELEMENTS OF UNJUST ENRICHMENT[20]

Plaintiffs' unjust enrichment claim fails because Plaintiffs do not allege either a substantial relationship between Plaintiffs and Amaranth Advisors, or a direct or specific benefit by Amaranth Advisors at Plaintiffs' direct expense, requisites for an unjust enrichment claim.  *See Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004).

Plaintiffs have not pled any sort of contractual or quasi-contractual relationship or direct dealings with Amaranth Advisors so as to allege the requisite substantial relationship.  *See Reading Int'l, Inc. v. Oaktree Capital Mgmt. LLC*, 317 F. Supp. 2d 301, 334 (S.D.N.Y. 2003); *see also Michele Pommier Models, Inc. v. Yanez*, 14 F. Supp. 2d 331, 338 (S.D.N.Y. 1998).  At most, Plaintiffs have alleged a contemporaneous trading relationship.  *See* Compl. ¶¶ 16, 17.  That is not enough, however, to plead unjust enrichment.  *See In re Motel 6 Secs. Litig.*, 161 F. Supp. 2d 227, 232 (S.D.N.Y. 2001) (dismissing unjust enrichment claim where Plaintiffs alleged

---

[20] Amaranth Advisors specifically incorporate by reference the arguments made by Defendants Maounis, the Master Fund and AIL in support of dismissal of Plaintiffs' unjust enrichment claim.

a "contemporaneous trading relationship"); *see also CompuDyne, Corp. v. Shane*, 453 F. Supp. 2d 807, 833 (S.D.N.Y. 2006) (dismissing unjust enrichment claim where plaintiffs did not allege they were counterparties to any of the allegedly unlawful trades).

Further, Plaintiffs do not allege that Amaranth Advisors are in possession of money or property that rightfully belongs to them.  In order for Plaintiffs to survive a motion to dismiss, they must allege, in more than mere conclusory terms, how the alleged benefit to Defendants came at Plaintiffs' direct expense, which they have failed to do.  *See In re Bayou Hedge Funds Inv. Litig.*, 472 F. Supp. 2d 528, 532 (S.D.N.Y. 2007) (dismissing unjust enrichment claim as it only alleged in a conclusory manner that the defendants were unjustly enriched and did not pled that defendants received any money from the plaintiffs during the class period); *Fed. Treasury Enter. v. Spirits Int'l, N.V.*, 425 F. Supp. 2d 458, 475 (S.D.N.Y. 2006) (same).  In fact, as Plaintiffs concede, Amaranth Advisors lost money on their NYMEX trades (Compl. ¶¶ 170-71), so it is illogical that Defendants possess money belonging to Plaintiffs.  Further, Plaintiffs' recitation of facts upon which manipulation could be found is not enough to allege the enrichment came at Plaintiffs' expense.  *See Mina Inv. Holdings Ltd. v. Lefkowitz*, 51 F. Supp. 2d 486 (S.D.N.Y. 1999) (holding that allegations upon which dilution in stock price (due to the defendants' unlawful acts) could be found was not enough to allege that the enrichment came at the plaintiff-shareholders' expense).  At the very *most*, this is what Plaintiffs have done in their Complaint.  Therefore, Plaintiffs have failed to plead an claim for unjust enrichment.

## V.   PLAINTIFFS DO NOT ALLEGE ANY OF THE ELEMENTS FOR A CONSTRUCTIVE TRUST

Plaintiffs also are not entitled to the establishment of a constructive trust.  (Compl. ¶ 270).  New York law generally requires four elements for a constructive trust: 1) a confidential or fiduciary relationship; 2) a promise; 3) transfer in reliance on the promise; and 4) unjust

enrichment. *In re First Cent. Fin. Corp.*, 377 F.3d 209, 212 (2d Cir. 2004) (finding request for a constructive trust improper as Plaintiffs fail to establish an unjust enrichment). *Cf. Martha Graham School and Dance Found., Inc. v. Martha Graham Ctr. of Contemporary Dance, Inc.*, 380 F.3d 624, 646 (2d Cir. 2004) ("constructive trust is appropriate when there is clear and convincing evidence" of all four elements). As explained above, Plaintiffs' unjust enrichment claim fails for several reasons. Even if this Court finds Plaintiffs alleged unjust enrichment, the constructive trust claim still fails because Plaintiffs have alleged no facts as to the existence of a confidential or fiduciary relationship, or that any promise and a transfer in reliance on the promise was made between any Plaintiff and any Defendant. *See Modica v. Modica*, 791 N.Y.S.2d 134 (2d Dep't 2005) (affirming dismissal of constructive trust claim where the plaintiffs could not show a promise, transfer in reliance, or unjust enrichment).

## Conclusion

For all the foregoing reasons, and those stated in the briefs submitted by the other Defendants, Amaranth Advisors respectfully request that this Court dismiss the Complaint in its entirely with prejudice and grant such other relief as this Court deems just and proper.

Dated: New York, New York
     April 28, 2008

Respectfully submitted,

**WINSTON & STRAWN LLP**

By: /s/ David E. Mollón

David E. Mollón (DM-5624)
Steven M. Schwartz (SS-4216)
dmollon@winston.com
sschwartz@winston.com

200 Park Avenue
New York, New York 10166
(212) 294-6700

-30-

Stephen J. Senderowitz
Kristen V. Grisius
Gretchen A. Vetter
ssenderowitz@winston.com
kgrisius@winston.com
gvetter@winston.com

35 West Wacker Drive
Chicago, IL 60601
(312) 558-5600

*Attorneys for Defendants Amaranth
Advisors L.L.C. and Amaranth Advisors
(Calgary) ULC*