David E. Mollón (DM-5624)
Steven M. Schwartz (SS-4216)
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, New York 10166
(212) 294-6700

*Attorneys for Defendants*
*Amaranth Capital Partners LLC,*
*Amaranth Group Inc.,*
*Amaranth Management Limited Partnership, and*
*Amaranth Partners LLC,*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

|  |  |  |
|---|---|---|
| | : | |
| **IN RE: AMARANTH NATURAL GAS** | : | |
| **COMMODITIES LITIGATION** | : | **Electronically Filed** |
| | : | |
| **This Document Relates to:** | : | **Master File No.: 07 Civ. 6377 (SAS)** |
| | : | |
| **ALL ACTIONS** | : | **Oral Argument Requested** |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**MEMORANDUM OF LAW IN SUPPORT**
**OF MOTION TO DISMISS**
**THE CORRECTED CONSOLIDATED CLASS ACTION COMPLAINT**
**BY DEFENDANTS AMARANTH CAPITAL PARTNERS LLC,**
**AMARANTH GROUP INC.,**
**AMARANTH MANAGEMENT LIMITED PARTNERSHIP, AND**
**AMARANTH PARTNERS LLC**

# TABLE OF CONTENTS

Page(s)

**Preliminary Statement**.................................................................................................1

**Factual Background**....................................................................................................3

    A.   The Other Amaranth Entities: Non-Trading Entities......................................3

    B.   The Complaint's Insufficient Allegations Against the Non-Trading Other
        Amaranth Entities .........................................................................................4

**Argument**...................................................................................................................5

I.    THE COMPLAINT FAILS TO STATE A CLAIM AGAINST THE OTHER
     AMARANTH ENTITIES FOR MANIPULATION ............................................5

    A.   Plaintiffs Lack Standing To Assert Claims Based On Manipulation Of Settlement
        Prices.............................................................................................................5

    B.   Plaintiffs' General Claim For Manipulation of the Market Throughout the Class
        Period Fails Under Either Rule 9(b) or Rule 8(a) ...........................................6

        1.   Under Rule 9(b), Plaintiffs Must Plead With Particularity Facts Specific To
            Each Defendant............................................................................................7

        2.   Plaintiffs Fail To Allege Manipulation Under Rule 9(b)........................................8

        3.   Even Under The Less Stringent Pleading Standard Of Rule 8, Plaintiffs'
            Vague and Conclusory Allegations Against The Other Amaranth Entities Are
            Not Adequate ..............................................................................................9

II.   PLAINTIFFS' SECONDARY LIABILITY CLAIMS MUST BE DISMISSED FOR
     FAILURE TO PLEAD SUFFICIENT FACTS OR BECAUSE PLAINTIFFS LACK
     STANDING TO ASSERT THE CLAIMS ...........................................................10

    A.   Plaintiffs Plead Insufficient Facts Supporting An Aiding And Abetting
        Manipulation Claim .....................................................................................10

    B.   Plaintiffs' CEA Section 2(a)(1)(B) Claim Does Not Allege The Requisite Elements
        Of An Agency Relationship..........................................................................13

        1.   The Complaint Does Not Allege Agency Between Any Of The Other
            Amaranth Entities And Any Of The Other Defendants........................................15

        2.   Plaintiffs Cannot Allege Agency Based Solely on Corporate Relationship,
            Shared Associational Name And Ownership Interests .........................................17

        3.   AP And ACP's Status As Passive Investors In The Master Fund Does Not
            Extend Vicarious Liability To Them ...................................................................18

# TABLE OF CONTENTS
### (continued)

Page(s)

C.  There Is No Private Right Of Action Under CEA Section 13(b) Or Rule 166.3 And
None Of The Defendants Were CFTC Registrants .......................................................19

III.  PLAINTIFFS' UNJUST ENRICHMENT CLAIM MUST BE DISMISSED FOR
FAILURE TO PLEAD THE REQUISITE ELEMENTS ......................................................21

**Conclusion** .................................................................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
   493 F.3d 87 (2d Cir. 2007).................................................................................7, 9

*B. H. Papasan v. Allain*,
   478 U.S. 265 (1986)...........................................................................................9, 20

*Bell Atlantic Corp. v. Twombly*,
   --- U.S. ---, 127 S. Ct. 1955 (2007)............................................................9, 10, 15

*Benfield v. Mocatta Metals Corp.*,
   No. 91-CIV-8255 (LJF), 1992 WL 58879 (S.D.N.Y. Mar. 13, 1992)..............11, 12

*Briar-patch Ltd., L.P. v. Phoenix Pictures, Inc.*,
   373 F.3d 296 (2d. Cir. 2004)..................................................................................21

*Cary Oil Co., Inc. v. MG Refin. & Mktg., Inc.*,
   230 F. Supp. 2d 439 (S.D.N.Y. 2002).....................................................................15

*CFTC v. Commodities Fluctuations Sys., Inc.*,
   583 F. Supp. 1382 (S.D.N.Y. 1984)........................................................................21

*CFTC v. Carnegie Trading Group, Ltd.*,
   450 F. Supp. 2d 788 (N.D. Ohio 2006)...................................................................20

*CFTC v. Int'l Fin. Servs.*,
   323 F. Supp. 2d 482 (S.D.N.Y. 2004).....................................................................20

*CFTC v. Johnson*,
   408 F. Supp. 2d 259 (S.D. Tex. 2005) ....................................................................13

*Cleveland v. Caplaw Enter.*,
   448 F.3d 518 (2d Cir. 2006)...................................................................................16

*Cohen v. Standard Bank Inv. Corp. (Jersey) Ltd.*,
   No. 97 Civ. 3802 (SAS), 1998 WL 782024 (S.D.N.Y. Nov. 6, 1998) (Scheindlin, J.)...........17

*Damato v. Hermanson*,
   153 F.3d 464 (7th Cir. 1998) .................................................................................11

*Ellison v. Am. Image Motor Co., Inc.*,
   36 F. Supp. 2d 628 (S.D.N.Y. 1999).......................................................................11

*Ez-Tixz, Inc. v. Hit-Tix, Inc.*,
No. 93 Civ. 3791 (CSH), 1995 WL 77589 (S.D.N.Y. Feb. 27, 1995)..............................17, 19

*Fed. Deposit Ins. Corp.  v. FSI Futures, Inc.*,
No. 88 Civ. 0906 (PNL), 1990 U.S. Dist. LEXIS 2907 (S.D.N.Y. Mar. 13, 1990) .................7

*Fed. Deposit Ins. Corp. v. FSI Futures, Inc.*,
No. 88 Civ. 0906 (PNL), 1991 WL 224302 (S.D.N.Y. Oct. 16, 1991) ............................14, 20

*Fustok v. Conticommodity Servs., Inc.*,
618 F. Supp. 1069 (S.D.N.Y. 1985).......................................................................................20

*Goldstein v. SEC*,
451 F.3d 873 (D.C. Cir. 2006) ...............................................................................................12

*Grossman v. Citrus Assoc. of New York Cotton Exch., Inc.*,
706 F. Supp. 221 (S.D.N.Y. 1989)...........................................................................................9

*Guttman v. CFTC*,
197 F.3d 33 (2d Cir. 1999).....................................................................................................14

*In re Bayou Hedge Funds Inv. Litig.*,
472 F. Supp. 2d 528 (S.D.N.Y. 2007).....................................................................................22

*In re Crude Oil Commodity Litig.*,
No. 06 Civ. 6677, 2007 WL 1946553 (S.D.N.Y. June 28, 2007)..........................................6, 7

*In re First Cent. Fin. Corp.*,
377 F.3d 209 (2d Cir. 2004)...................................................................................................22

*In re Lernout & Hauspie Sec. Litig.*,
230 F. Supp. 2d 152 (D. Mass. 2002) ....................................................................................18

*In re Natural Gas Commodity Litig.*,
337 F. Supp. 2d 498 (S.D.N.Y. 2004) ("*Natural Gas I*") ........................................................17

*In re Natural Gas Commodity Litig.*,
358 F. Supp. 2d 336 (S.D.N.Y. 2005) ("*Natural Gas II*").........................................................8

*In re Richardson Sec., Inc.*,
Comm. Fut. L. Rep. (CCH) 21,145 (CFTC Jan. 27, 1981) (Mollón Dec. Ex. A) .................11

*Iqbal v. Hasty*,
490 F.3d 143 (2d Cir. 2007)....................................................................................................9

*Kolbeck v. LIT America*,
923 F. Supp. 557 (S.D.N.Y. 1996)................................................................................ passim

*Korwek v. Hunt*,
646 F. Supp. 953 (S.D.N.Y. 1986)........................................................................19

*Krause v. Forex Exch. Mkt., Inc.*,
356 F. Supp. 2d 332 (S.D.N.Y. 2005)...................................................................10

*Leibowitz v. Cornell Univ.*,
445 F.3d 586 (2d Cir. 2006)..................................................................................15

*Martha Graham School and Dance Found., Inc. v. Martha Graham Ctr. of*
*Contemporary Dance, Inc.*,
380 F.3d 624 (2d Cir. 2004)..................................................................................23

*Merrill Lynch Inv. Mgrs. v. OptiBase, Ltd.*,
337 F.3d 125 (2d Cir. 2003)..................................................................................18

*Meyer v. Holley*,
537 U.S. 280 (2003)..............................................................................................18

*Michele Pommier Models, Inc. v. Yanez*,
14 F. Supp. 2d 331 (S.D.N.Y. 1998).....................................................................22

*Michelson v. Merrill Lynch Pierce, Fenner & Smith, Inc.*,
619 F. Supp. 727 (S.D.N.Y. 1985)........................................................................19

*Mina Inv. Holdings Ltd. v. Lefkowitz*,
51 F. Supp. 2d 486 (S.D.N.Y. June 15, 1999) ......................................................22

*Nicholas v. Saul Stone & Co.*,
224 F.3d 179 (3d Cir. 2000)..................................................................................12

*Nuevo Mundo Holdings v. Pricewaterhouse Coopers LLP*,
No. 03 Civ. 0613 GBD, 2004 WL 112948 (S.D.N.Y. Jan. 22, 2004) ....................16

*Pereira v. United Jersey Bank, N.A.*,
201 B.R. 644 (S.D.N.Y. 1996)..............................................................................13

*Reading Int'l., Inc. v. Oaktree Capital Mgmt., LLC*,
317 F. Supp. 2d 301 (S.D.N.Y. 2003)...................................................................22

*Ritchie Capital Mgmt., L.L.C. v. Coventry First LLC*,
No. 07 Civ. 3494 (DLC), 2007 WL 2044656 (S.D.N.Y. July 17, 2007)................15

*Smith v. Local 819 I. B. T. Pension Plan*,
291 F.3d 236 (2d Cir. 2002)....................................................................................9

*Stander v. Fin. Clearing & Servc. Corp.*,
730 F. Supp. 1282 (S.D.N.Y. 1990)......................................................................13

*Tatum v. Legg Mason Wood Walker, Inc.*,
    83 F.3d 121 (5th Cir. 1996) .................................................................11

*Thornock v. Kinderhill*,
    749 F. Supp. 513 (S.D.N.Y. 1990).........................................................13

*Vitanza v. Bd. of Trade of the City of New York*,
    No. 00-cv-7393, 2002 WL 424699 (S.D.N.Y. Mar. 18, 2002)...............10

## STATUTES

7 U.S.C. § 2(a)(1)(B) .............................................................. passim

7 U.S.C. § 6(b) .......................................................................19

7 U.S.C. § 9 ........................................................................5, 6

7 U.S.C. § 13(b) ...............................................................5, 19, 20

## OTHER AUTHORITIES

17 C.F.R. § 166.3 ............................................................19, 20, 21

Federal Rule of Civil Procedure 8 ..........................................1, 14

Federal Rule of Civil Procedure 9(b)..................................... passim

Federal Rule of Civil Procedure 12(b)(6) ..............................1, 15

Pursuant to Federal Rules of Civil Procedure ("Rule(s)") 9(b), 8(a), 12(b)(1) and 12(b)(6), Defendants Amaranth Capital Partners LLC, Amaranth Group Inc., Amaranth Management Limited Partnership and Amaranth Partners LLC (together, "the Other Amaranth Entities") respectfully submit this memorandum of law in support of their motion to dismiss Plaintiffs' Corrected Consolidated Class Action Complaint ("Complaint").[1]

## **Preliminary Statement**

It is factually nonsensical, and legally unsupportable, to assert primary and secondary liability for market manipulation against entities that did not direct or conduct any of the alleged manipulative trading. Yet Plaintiffs, purported New York Mercantile Exchange ("NYMEX") natural gas futures traders, did exactly that in their Complaint against the Other Amaranth Entities. The Other Amaranth Entities consist of shareholders in a hedge fund named Amaranth LLC (the "Master Fund"), a holding entity, and a non-trading service provider. Plaintiffs concede that none of the Other Amaranth Entities directed any of the futures trading at issue, that instead, the futures trading was directed by the Master Fund's investment advisors, Amaranth Advisors L.L.C. and Amaranth Advisors (Calgary) ULC (together, "Amaranth Advisors"), who are named as Defendants, and that the futures trading was actually conducted by certain individual natural gas traders, who are also named as Defendants. (Compl. ¶¶ 22, 248).

Indeed, the Commodity Futures Trading Commission ("CFTC"), the regulatory agency charged with the exclusive jurisdiction to regulate futures markets, ***did not name any*** of the Other Amaranth Entities as defendants when it brought ***attempted*** (not actual) manipulation

---

[1] The Other Amaranth Entities join and incorporate by reference the arguments of all other Defendants in their motions to dismiss to the extent applicable.

charges under the CEA against Amaranth Advisors and their head natural gas trader.[2]   Not surprisingly, the Other Amaranth Entities are not aware of any case holding entities that did not take part in or direct the alleged manipulative trading, like the Other Amaranth Entities here, either primarily or even secondarily liable for manipulation under the CEA.

Notwithstanding, Plaintiffs assert three counts against the Other Amaranth Entities, all of which fail to state a claim.  Nowhere in Plaintiffs' Complaint is there a single substantive factual allegation regarding the Other Amaranth Entities' purported involvement in the alleged manipulative scheme.  Other than a few generic references to these entities, Plaintiffs rely on inadequate group pleading, lumping the Other Amaranth Entities under the heading "the Amaranth Defendants" or "Amaranth."   (Compl. ¶ 33).   Plaintiffs do so even though they concede that each of the "Amaranth" entities (eight in total) are "legally distinct" entities. (Compl. ¶ 32).

Specifically, Count I alleges that the Other Amaranth Entities manipulated the natural gas futures contracts on the NYMEX in violation of the CEA during a seven-month period in 2006.[3] This claim fails because Plaintiffs allege no facts demonstrating that any of the Other Amaranth Entities committed any manipulative act or possessed the requisite ability or specific intent to engage in a manipulation.

Count II alleges a laundry list of theories of secondary liability for manipulation: aiding and abetting, agency liability, control person liability and failure to supervise liability.   These

---

[2] *See U.S. Commodity Futures Trading Comm'n v. Amaranth Advisors, L.L.C., et al.*, Case No. 07-cv-06682 (S.D.N.Y., filed on July 25, 2007).  The defendants therein have filed motions to dismiss the CFTC's complaint, which are fully briefed and pending.  In addition to not naming any of the Other Amaranth Entities as defendants, the CFTC also did not allege attempted or actual manipulation of the 72 contracts at issue herein.

[3] This seven-month period is referred to in the Complaint as the proposed class period of February 16, 2006 through September 28, 2006 (the "Class Period").  (Compl. ¶ 1).

claims fare no better than Plaintiffs' direct manipulation claims. First, Plaintiffs' aiding and abetting claim fails to allege a single fact demonstrating that any of the Other Amaranth Entities knew of any alleged CEA violation or willfully assisted such violations. Second, Plaintiffs' agency claim fails adequately to allege that any of the Other Amaranth Entities were principals of any other Defendant. Third, Plaintiffs do not have a private right of action to assert control person or failure to supervise liability under the CEA.

Plaintiffs' unjust enrichment claim in Count III against the Other Amaranth Entities is similarly defective. The Complaint is devoid of any factual allegations as to a relationship between Plaintiffs and the Other Amaranth Entities or regarding any benefit to the Other Amaranth Entities at Plaintiffs' expense, both requisites for such a claim.

Accordingly, the Court should dismiss the Complaint with prejudice.[4]

## Factual Background

### A.    The Other Amaranth Entities: Non-Trading Entities

None of the Other Amaranth Entities are alleged to have engaged in any trading of any kind or to have directed the trading at issue in the Complaint. Amaranth Capital Partners LLC ("ACP") and Amaranth Partners LLC ("AP"), Delaware limited liability companies, are passive shareholders in the Master Fund, a multi-strategy hedge fund.[5] ACP and AP simply invested a substantial portion of their funds in the Master Fund.[6] The Master Fund then engaged Amaranth Advisors as its investment advisor, which in turn directed the trading at issue.

---

[4] On March 31, 2008, the Other Amaranth Entities sent a letter pursuant to this Court's rules to Plaintiffs' counsel stating the bases of the instant motion.

[5] Amaranth Advisors L.L.C. serves as the manager of AP, but AP did not engage in any trading.

[6] The other feeder fund investing in the Master Fund is Amaranth International Limited ("AIL"). Both the Master Fund and AIL are Defendants, are represented by separate counsel, and are filing separate motions to dismiss the Complaint.

The remaining two Other Amaranth Entities, Amaranth Group Inc. ("AGI") and Amaranth Management Limited Partnership ("AMLP"), were similarly uninvolved in the alleged manipulative trading.    AGI is a Delaware S corporation that merely provided certain administrative (*i.e.*, non-trading) services to the "Amaranth Defendants."    AMLP is a Delaware holding company owning a majority non-managing member interest in Amaranth Advisors L.L.C.

### B.    The Complaint's Insufficient Allegations Against the Non-Trading Other Amaranth Entities

None of these allegations set forth in the Complaint demonstrate how any of the Other Amaranth Entities possibly could be primarily or secondarily liable for manipulation.    Plaintiffs simply refer to the Other Amaranth Entities in a conclusory manner throughout the Complaint, alleging that each of the Other Amaranth Entities either acted as a "control[] person" (Compl. ¶¶ 23, 24, 25, 27, 255), "agent" (Compl. ¶¶ 23, 24, 25), or principal of the other Defendants (Compl. ¶¶ 23, 24, 25, 27), or "willfully aided, abetted, counseled, induced, or procured the commission of violations of the [CEA]" (Compl. ¶¶ 246, 247, 248).    None of the above conclusory allegations, however, are supported by the few facts alleged.

Plaintiffs simply state that ACP and AP "invested substantially all of their capital in [the Master Fund]" and "thus got the manipulation started by putting up the funds" and "shared in the financial benefits of the manipulation" (Compl. ¶¶ 23, 246).    Plaintiffs later concede, however, that "Amaranth" lost money from its natural gas futures trading (Compl. ¶¶ 170, 171).    Next, Plaintiffs plead AGI "employed all the natural gas traders" and "executives" (Compl. ¶ 25), without any substantive allegation that AGI controlled the natural gas traders and executives. Moreover, Plaintiffs later plead that it was "Amaranth Advisors … that directed the investments and employed the natural gas traders" (Compl. ¶¶ 22, 248).    As to AMLP, the Complaint is

lacking any substantive allegation regarding any action it allegedly took in furtherance of any purported manipulation. Therefore, the allegations against the Other Amaranth Entities are wholly insufficient to state a claim against them.

## Argument

## I.  THE COMPLAINT FAILS TO STATE A CLAIM AGAINST THE OTHER AMARANTH ENTITIES FOR MANIPULATION

Plaintiffs' attempt to assert a primary manipulation claim against the Other Amaranth Entities under Section 9(a) of the CEA utterly fails.[7] Plaintiffs allege two manipulation theories in their Complaint: (1) Defendants intentionally and contemporaneously manipulated the settlement price of the expiring natural gas futures contracts on three specific dates; and (2) Defendants intentionally caused artificial prices for all 72 natural gas futures contracts trading throughout the seven-month Class Period. Both theories fail.

### A.  Plaintiffs Lack Standing To Assert Claims Based On Manipulation Of Settlement Prices

Plaintiffs allege in their Complaint that Defendants manipulated the *settlement prices* of the March, April and May 2006 natural gas futures contracts in violation of Section 9(a) of the CEA. (Compl. ¶¶ 2e, 5, 50, 118, 125, 144). Plaintiffs, however, lack standing to assert a claim based on manipulation of settlement prices. With respect to this point, the Other Amaranth Entities adopt the arguments set forth in the Memorandum of Law in Support of Motion to

---

[7] Plaintiffs also cite CEA Sections 6(c) and 6(d) in their manipulation count, but there is no private right of action for manipulation under those sections—only the CFTC can bring claims under those sections. *See* 7 U.S.C. § 9 (Section 6(c) discussing the ability of the "Commission" to bring an action for manipulation of attempted manipulation); 7 U.S.C. § 13(b) (Section 6(d) discussing the ability of the "Commission" to enter a cease-and-desist order against any person engaged in manipulation or attempted manipulation). *See also* Section I(A) of Amaranth LLC's memorandum of law in support of its motion to dismiss which is incorporated by reference.

Dismiss the Corrected Consolidated Class Action Complaint by Amaranth Advisors ("Advisors Mem."), and respectfully refer the Court to that brief.

**B.** **Plaintiffs' General Claim For Manipulation of the Market Throughout the Class Period Fails Under Either Rule 9(b) or Rule 8(a)**

Plaintiffs' default theory of manipulation, that the Other Amaranth Entities intentionally and contemporaneously caused artificial prices in all 72 natural gas futures contracts trading throughout the entire Class Period, is unsalvageable. For a primary CEA manipulation claim, Plaintiffs must allege that the Other Amaranth Entities knowingly and intentionally took affirmative actions to manipulate the NYMEX futures market. *See In re Crude Oil Commodity Litig.*, No. 06 Civ. 6677, 2007 WL 1946553, at *3 (S.D.N.Y. June 28, 2007). Plaintiffs concede that the Other Amaranth Entities took no part in the trading at issue, and that instead, all trading and strategy decisions were made by Amaranth Advisors. (Compl. ¶ 22). Therefore, Plaintiffs' primary manipulation claim must fail.

Specifically, to state a claim for manipulation under Section 9(a)(2) of the CEA, Plaintiffs must demonstrate: (1) the defendant had the ability to influence market prices; (2) an artificial price existed; (3) the defendant caused the artificial price; and (4) the defendant specifically intended to cause the artificial price. *Id.* at *3. The Complaint fails to allege any of these elements against the Other Amaranth Entities—entities that did not make a single trade or trading decision—not only as an alleged manipulation of all 72 NG contracts throughout the Class Period, but also with respect to any alleged manipulation of settlement prices.

### 1.    Under Rule 9(b), Plaintiffs Must Plead With Particularity Facts Specific To Each Defendant

Rule 9(b) mandates that "all averments of fraud" be pled with particularity. FED. R. CIV. P. 9(b).[8]  A complaint alleging manipulation satisfies Rule 9(b) only if it states "with particularity the nature, purpose, and effect of the fraudulent conduct and the roles of the defendants." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 102 (2d Cir. 2007).  The Complaint must allege "what manipulative acts were performed, which defendants performed them, when the manipulative acts were performed, and what effect the scheme had on the market for the securities at issue." *Id.* (citations omitted).  If Plaintiffs "cannot point to one specific instance in which defendants or their agents" engaged in manipulative acts, the Complaint cannot survive under Rule 9(b). *In re Crude Oil*, 2007 WL 1946553, at *6.  To allege fraud, it is "not permissible" to group defendants under a single label, like Plaintiffs do herein. *Fed. Deposit Ins. Corp. v. FSI Futures, Inc.*, No. 88-0906 (PNL), 1990 U.S. Dist. LEXIS 2907, at *27 (S.D.N.Y. Mar. 13, 1990).  When there are multiple Defendants, "broad allegations that several defendants participated in a scheme, or conclusory assertions that one defendant controlled another, or that some defendants are guilty because of their association with others, do not inform each defendant of its role in the fraud and do not satisfy Rule 9(b)." *Kolbeck v. LIT America*, 923 F. Supp. 557, 569 (S.D.N.Y. 1996).

---

[8] As set forth in Advisors' Memorandum, Plaintiffs' CEA manipulation claim is subject to Rule 9(b).  *See* Advisors Mem., Section II(A).  Plaintiffs assert that Defendants' allegedly large volume trading deceived the market as to the true value, supply and demand of natural gas.  Therefore, Plaintiffs' Complaint sounds in fraud so as to be subject to Rule 9(b).  To avoid duplicating the argument made by Amaranth Advisors, the Other Amaranth Entities adopt the arguments set forth in the Advisors Mem. in their entirety.

### 2.    Plaintiffs Fail To Allege Manipulation Under Rule 9(b)

At odds with Rule 9(b), Plaintiffs' manipulation claim does not allege a single manipulative act by any of the Other Amaranth Entities. Instead, Plaintiffs lump the Other Amaranth Entities under the heading "Amaranth Defendants" in an effort to hide the complete lack of any factual basis for their primary manipulation claim against the Other Amaranth Entities.

None of the isolated references in the Complaint to the Other Amaranth Entities even remotely pleads that the Other Amaranth Entities had the specific intent to manipulate the NYMEX futures market at any point in time or took any manipulative act in support of such a manipulation. Asserting that AGI employed, but did not control, the natural gas traders and that AP and ACP passively invested in the Master Fund, in no way connects them to any alleged manipulation of the NYMEX market. Moreover, the Complaint is wholly lacking as to any action at all by AMLP. To satisfy Rule 9(b), Plaintiffs must specify what acts were performed by which Defendant when, and what effect the scheme had on the NYMEX futures market. *In re Natural Gas Commodity Litig.*, 358 F. Supp. 2d 336, 343 (S.D.N.Y. 2005) (citations omitted) ("*Natural Gas II*"). Plaintiffs have utterly failed to do so in regards to the Other Amaranth Entities.

Plaintiffs attempt in vain to salvage the primary manipulation claim by lumping the Other Amaranth Entities with all the Defendants together as "Amaranth" or under the label the "Amaranth Defendants." (Compl. ¶ 33). Plaintiffs do so despite conceding that each of the Other Amaranth Entities are "legally distinct" entities. (Compl. ¶ 32). When a complaint "simply says nothing about [the defendant], except in the most general of terms in those 'kitchen sink' portions of the pleading where everyone is alleged to have done everything in violation" of the law, the complaint must be dismissed. *See Grossman v. Citrus Assoc. of New York Cotton*

*Exch., Inc.*, 706 F. Supp. 221, 232 (S.D.N.Y. 1989) (dismissing manipulation claim under the CEA for failure to state a claim or, in the alternative, under Rule 9(b)) (citations omitted); *Kolbeck*, 923 F. Supp. at 569 (plaintiffs cannot satisfy Rule 9(b) by making "[b]road allegations that several defendants participated in a scheme"). Accordingly, the primary manipulation claim against the Other Amaranth Entities must be dismissed.

### 3. Even Under The Less Stringent Pleading Standard Of Rule 8, Plaintiffs' Vague and Conclusory Allegations Against The Other Amaranth Entities Are Not Adequate

Even if the heightened standards of Rule 9(b) do not apply, to withstand a motion to dismiss, a complaint must allege facts sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, --- U.S. ---, 127 S. Ct. 1955, 1965 (2007). In particular, the Supreme Court requires a complaint to set forth "plausible" grounds for relief, not just the mere possibility that a plaintiff may ultimately succeed. *Id.* at 1965-68.[9]

Although on a motion to dismiss the Court must accept *factual* allegations in the Complaint as true, it need not and should not accept conclusory statements unsupported by assertions of fact. *See Smith v. Local 819 I. B. T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002) ("conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss") (citations omitted); *see also B. H. Papasan v. Allain*, 478 U.S. 265, 286 (1986) ("we are not bound to accept as true a legal conclusion couched as a factual allegation"). Thus, vague or conclusory allegations will not withstand a motion to dismiss. *See Vitanza v. Bd. of Trade of the City of New York*, No. 00-cv-7393, 2002 WL 424699, at *2 (S.D.N.Y. Mar. 18, 2002).

---

[9] Although *Twombly* was an antitrust case, the Second Circuit has applied this plausibility standard to cases outside the antitrust context. *See, e.g., Iqbal v. Hasty*, 490 F.3d 143, 158 (2d Cir. 2007); *ATSI*, 493 F.3d at 98 n.2.

As discussed above, Plaintiffs have failed to allege the most basic facts to support a CEA manipulation claim against the Other Amaranth Entities.  There are no factual allegations regarding any manipulative act or any basis upon which to infer manipulative intent.  Moreover, there are no factual allegations that the Other Amaranth Entities—entities that had no involvement in the trading at issue—had the ability to manipulate the market.

II.    **PLAINTIFFS' SECONDARY LIABILITY CLAIMS MUST BE DISMISSED FOR FAILURE TO PLEAD SUFFICIENT FACTS OR BECAUSE PLAINTIFFS LACK STANDING TO ASSERT THE CLAIMS**

   A.    **Plaintiffs Plead Insufficient Facts Supporting An Aiding And Abetting Manipulation Claim**

Plaintiffs' claim against the Other Amaranth Entities for allegedly aiding and abetting manipulation by the "Amaranth Defendants" (Compl. ¶¶ 244, 246, 247, 248, 249) must be dismissed for failure to allege the requisite elements with the particularity mandated under Rule 9(b) and/or for failure to set forth "plausible" grounds for relief under *Twombly*, 127 S. Ct. at 1965. [10]  To plead a cause of action for aiding and abetting under the CEA, Plaintiffs must show: (1) a manipulation in violation of the CEA; (2) the Defendants knew of the principal's intent to commit a manipulation in violation of the CEA; (3) the Defendants had the intent to further that violation; and (4) the Defendants lent substantial assistance to the primary violators in committing the primary violation.[11]   *Krause*, 356 F. Supp. 2d at 338 (citations omitted). Plaintiffs do not meet their burden.

_____

[10] As argued previously, Rule 9(b) applies to Plaintiffs' manipulation claim; therefore, Plaintiffs must also plead their aiding and abetting claim with particularity pursuant to Rule 9(b).  *See Krause v. Forex Exch. Mkt., Inc.*, 356 F. Supp. 2d 332, 339 n.50 (S.D.N.Y. 2005) (stating that where the primary violations upon which the aiding and abetting claims are based sound in fraud and are subject to the requirement of Rule 9(b), Rule 9(b) also applies to the claims of aiding and abetting fraud) (*citing Armstrong v. McAlpin*, 699 F.2d 79, 92 (2d Cir. 1983)).

[11] If the Court finds that Plaintiffs' primary manipulation claim against Defendants fails, Plaintiffs' aiding and abetting claims must also fail.  *See Tatum v. Legg Mason Wood Walker,*

First, the Complaint merely alleges that each Defendant aided and abetted a manipulation violation under the CEA by the "Amaranth Defendants." (Compl. ¶¶ 244-249, 251, 252). Such allegations are insufficient to satisfy Rule 9(b). *See Ellison v. Am. Image Motor Co., Inc.*, 36 F. Supp. 3d 628, 640 (S.D.N.Y. 1999) (dismissing market manipulation claims against certain defendants for failure to comply with Rule 9(b), stating that Rule 9(b) is "not satisfied by a complaint in which defendants are clumped together in vague allegations.") (citations omitted).

Plaintiffs also fail to plead sufficient facts demonstrating the requisite knowledge for an aiding and abetting claim as to the Other Amaranth Entities. Under the CEA, courts require actual knowledge or "specific unlawful intent." *In re Richardson Sec., Inc.*, Comm. Fut. L. Rep. (CCH) 21,145, at 24,642-46 (CFTC Jan. 27, 1981) (Mollón Dec. Ex. A). "[P]roof of a specific unlawful intent to further the underlying violation is necessary before one can be found liable for aiding and abetting a violation of the [CEA]." *Id.* at 24,642; *see Damato v. Hermanson*, 153 F.3d 464, 472 (7th Cir. 1998) (a plaintiff "must allege that the aider and abettor acted knowingly"). It is not enough under the CEA that the aider and abettor "know of the principal's violation of the law, they must willfully assist in the violation and share in the principal's intent." *Benfield v. Mocatta Metals Corp.*, No. 91-CIV-8255 (LJF), 1992 WL 58879, at *6 (S.D.N.Y. Mar. 13, 1992) (citations omitted) (allegations "that defendants 'were aware of, or recklessly disregarded'" the alleged fraud are insufficient to allege "that defendants themselves intended to defraud [the purported victims]").

The Complaint does not allege that the Other Amaranth Entities actually knew of any alleged manipulative activities of any Defendant, let alone that they specifically intended to

_____

*Inc.*, 83 F.3d 121, 123 n.3 (5th Cir. 1996) ("Because we hold that Plaintiffs have not stated a claim against [the primary actor] under the [CEA], we must also necessarily hold that Plaintiffs have not stated a claim against the [secondary actor] for 'aiding and abetting' liability.") (citations omitted).

assist such alleged activities. Instead, Plaintiffs merely plead that ACP and AP "got the manipulation started by putting up funds for investment in Amaranth LLC." (Compl. ¶ 246). Allegations that AP and ACP merely invested in the Master Fund in no way support that they knew of—much less *willfully* assisted—any Defendant's alleged violation of the CEA. *See Nicholas v. Saul Stone & Co.,* 224 F.3d 179, 189-90 (3d Cir. 2000) (finding allegations that defendants "were aware, or with required minimal due diligence would have discovered" the primary defendants' CEA violations and that defendants "knew or recklessly disregarded facts showing that" the primary defendants were violating the CEA, insufficient to state an aiding and abetting claim under the CEA). Indeed, it is hardly unusual that Amaranth Advisors' trading and investment strategies were not shared with AP, ACP, and other investors, as well as AGI or AMLP. *See Goldstein v. SEC*, 451 F.3d 873, 875 (D.C. Cir. 2006) ("hedge funds typically remain secretive about their positions and strategies, even to their own investors") (internal citations omitted).

Plaintiffs simply assert that AGI "was general partner of [AMLP], controlled Amaranth Advisors, [and] employed the natural gas traders." (Compl. ¶ 248). Likewise, Plaintiffs merely plead that AMLP "controlled and substantially owned Amaranth Advisors." Again, these allegations fail to establish that AGI and AMLP had actual knowledge of any Defendant's alleged manipulation, let alone the specific intent to further such manipulation. Thus, Plaintiffs' allegations as to aiding and abetting a violation of the CEA as to the Other Amaranth Entities are insufficient to withstand a motion to dismiss.

Further, it is not enough that a defendant be aware of a violation. Instead, "it must be shown that the assistance rendered was substantial." *CFTC v. Johnson*, 408 F. Supp. 2d 259, 268 (S.D. Tex. 2005). *See also Benfield*, 1992 WL 58879 at *6. "Substantial assistance exists where

the alleged aider and abettor has played an active role in furthering the [] violation." *Thornock v. Kinderhill*, 749 F. Supp. 513, 516 (S.D.N.Y. 1990).

First, Plaintiffs simply allege that AMLP had an ownership interest in Amaranth Advisors. (Compl. ¶ 24). Mere ownership does not equal substantial assistance to a manipulation. Allegations that AP and ACP were shareholders in the Master Fund also say nothing about substantial assistance, only that they were part owners of the Master Fund. *See Pereira v. United Jersey Bank, N.A.*, 201 B.R. 644, 671-72 (S.D.N.Y. 1996) ("assistance is less likely to be deemed substantial if the defendant was motivated by a lawful goal, such as the generation of commissions, independent of that which motivated the primary wrongdoer").

As to AGI, Plaintiffs merely assert that it provided employee services to Amaranth Advisors. (Compl. ¶¶ 25, 248). Plaintiffs do not allege that they did so for any purpose other than for the hedge fund to carry out its day-to-day activities. Such allegations are not sufficient to plead substantial assistance. *Cf. Stander v. Fin. Clearing & Servc. Corp.*, 730 F. Supp. 1282, 1286 (S.D.N.Y. 1990) ("the simple providing of normal clearing services to a primary broker who is acting in violation of the law does not make out a case of aiding and abetting against the clearing broker"). There is no allegation that AGI made or directed any trades. Accordingly, the Complaint fails to state a cause of action for aiding and abetting a manipulation under the CEA as to the Other Amaranth Entities.

**B.    Plaintiffs' CEA Section 2(a)(1)(B) Claim Does Not Allege The Requisite Elements Of An Agency Relationship**

Plaintiffs' claim under Section 2(a)(1)(B) of the CEA, 7 U.S.C. § 2(a)(1)(B), against the Other Amaranth Entities for agency liability similarly fails under either Rule 9(b) or Rule 8. [12]

---

[12] If the Court dismisses the manipulation claim, there can be no vicarious liability. *See Kolbeck*, 923 F. Supp. at 570 (dismissing claim against the principal for violation of CEA where plaintiffs failed to adequately allege cause of action against the agent).

Section 2(a)(1)(B) creates liability if (1) the violator acted as the other's agent when he engaged in the unlawful activity, and (2) the violator's actions were within the scope of his employment or office. *See Guttman v. CFTC*, 197 F.3d 33, 37 n.6 (2d Cir. 1999). Plaintiffs, however, have not pled a sufficient agency relationship between any of the Other Amaranth Entities and any Defendant. Plaintiffs cannot establish an agency relationship between two entities simply by pleading a corporate relationship, one having an ownership interest in the other, one investing in the other, or by shared associational names.

As an initial matter, a Section 2(a)(1)(B) claim as to manipulation is also subject to Rule 9(b). *See Kolbeck*, 923 F. Supp. at 569. To allege agency under Rule 9(b), Plaintiffs must plead "allegations of fact showing [the purported principal's] complete control over [the primary wrongdoer that] are sufficient to permit an inference that [the wrongdoer] was [the alleged principal's] agent." *Fed. Deposit Ins. Corp. v. FSI Futures, Inc.*, 88 Civ. 0906 (PNL), 1991 WL 224302, at *7 (S.D.N.Y. Oct. 16, 1991). Plaintiffs fail to meet their heightened burden. Plaintiffs make no showing that the Other Amaranth Entities exercised "complete control" over any Defendant. Furthermore, Plaintiffs claim that all Defendants are liable as principals under Section 2(a)(1)(B) for the acts of their agents, the "Amaranth Defendants." Such allegations are universally recognized as insufficient under Rule 9(b). *See Kolbeck*, 923 F. Supp. at 569 ("Broad allegations that several defendants participated in a scheme, or conclusory assertions that one defendant controlled another, or that some defendants are guilty because of their association with others, do not inform each defendant of its role in the fraud and do not satisfy Rule 9(b).") (citations omitted).

Indeed, the allegations are so generic that Plaintiffs do not even give fair notice of the grounds for their claims pursuant to Rule 8(a). *See Leibowitz v. Cornell Univ.*, 445 F.3d 586,

591 (2d Cir. 2006). *See also Ritchie Capital Mgmt., L.L.C. v. Coventry First LLC*, No. 07 Civ.

3494 (DLC), 2007 WL 2044656 at *9-10, n.7 (S.D.N.Y. July 17, 2007) (dismissing claims for

failure to give "fair notice" where plaintiffs made allegations against four collective defendants

without identifying with specificity the enterprise(s) involved in the violations). Merely

asserting that the Other Amaranth Entities were "principals" in a conclusory fashion is not

enough to survive a motion to dismiss under Rule 12(b)(6). Such allegations do not "nudge[]

their claims across the line from conceivable to plausible." *Twombly*, 127 S. Ct. at 1974.[13]

### 1. The Complaint Does Not Allege Agency Between Any Of The Other Amaranth Entities And Any Of The Other Defendants

The Complaint fails to allege an agency relationship between any Other Amaranth Entity

and any Defendant. Plaintiffs must allege "(1) the manifestation by the principal that the agent

shall act for him; (2) the agent's acceptance of that undertaking; and (3) the understanding of the

parties that the principal is to be in control of the undertaking." *Cleveland v. Caplaw Enter.*, 448

F.3d 518, 522 (2d Cir. 2006) (citations omitted). The Complaint lacks any such allegations as to

the Other Amaranth Entities. There are no allegations that: (1) any of the Other Amaranth

Entities ever gave authority to any of the other Defendants to trade NG contracts on their behalf;

---

[13] Although Plaintiffs do not claim they are trying to pierce any of the Other Amaranth Entities' corporate veils, the effort to hold the Other Amaranth Entities responsible for the allegedly manipulative conduct of Amaranth Advisors is tantamount to veil piercing. The Complaint characterizes a host of separate legal entities as a "tightly knit association-in-fact, which operated as a single entity" (Compl. ¶¶ 29, 32), and thereby suggests that Amaranth Advisors is merely the alter ego of the Other Amaranth Entities. To pierce the corporate veil, Plaintiffs must plead with particularity: (1) that the owner exercised complete domination over the corporation with respect to the transaction at issue, and (2) that such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil. *Cary Oil Co., Inc. v. MG Refin. & Mktg., Inc.,* 230 F. Supp. 2d 439, 458 (S.D.N.Y. 2002); *Kolbeck,* 923 F. Supp. at 569 (showing of domination and control to advance alter ego theory of veil piercing must be made with greater particularity when alleging that the controlled corporation perpetrated fraud) (citing *Pits, Ltd. v. American Express Bank Int'l,* 911 F. Supp. 710, 715 (S.D.N.Y. 1996)). Plaintiffs' allegations do not come close to satisfying either prong of the test as to any of the Other Amaranth Entities.

(2) that any other Defendant ever accepted such an undertaking; or (3) that there was an understanding that any of the Other Amaranth Entities were to be in control of trading NG contracts. *See id.* at 522.

At most, Plaintiffs allege a remote connection between the Other Amaranth Entities and Amaranth Advisors, based solely on: 1) ACP and AP's non-controlling shareholder interests in the Master Fund, for which Amaranth Advisors served as investment advisors; 2) AMLP's non-managing member interest in Amaranth Advisors L.L.C.; 3) AGI's one-percent ownership interest in AMLP; and 4) shared associational names. *Id.* But none of these characteristics are enough to establish an agency relationship.

Moreover, the only allegation tying any individual Defendant directly to any of the Other Amaranth Entities is that AGI allegedly employed the three individual Defendants, but there are no factual allegations that AGI *controlled* any employee's trading or investing activities, which is necessary for agency. *See Nuevo Mundo Holdings v. Pricewaterhouse Coopers LLP*, No. 03 Civ. 0613 GBD,  2004 WL 112948, at *4 (S.D.N.Y. Jan. 22, 2004). Even Plaintiffs concede this point as they plead that Amaranth Advisors, not AGI, "directed the investments." (Compl. ¶ 22). Plaintiffs also contradict themselves and plead that Amaranth Advisors "employed the natural gas traders." (Compl. ¶¶ 22, 248).

Therefore, Plaintiffs rest on vague and conclusory allegations, which are insufficient under Section 2(a)(1)(B). *See In re Natural Gas Commodity Litig.*, 337 F. Supp. 2d 498, 516 (S.D.N.Y. 2004) ("*Natural Gas I*") (dismissing CEA agency claims where plaintiffs' allegations did not allege a sufficient relationship between the parent corporation and the subsidiary upon which a principal-agent relationship could be inferred); *Cohen v. Standard Bank Inv. Corp. (Jersey) Ltd.*, No. 97 Civ. 3802 (SAS), 1998 WL 782024, at *5-6 (S.D.N.Y. Nov. 6, 1998)

(Scheindlin, J.) (dismissing claim for agency liability where complaint pled insufficient facts to establish an agency relationship).

### 2. Plaintiffs Cannot Allege Agency Based Solely on Corporate Relationship, Shared Associational Name And Ownership Interests

The Other Amaranth Entities cannot be liable under agency concepts because there are court-imposed limits to principal-agent liability under Section 2(a)(1)(B).  First, the Other Amaranth Entities are aware of no case in which a court has held a corporation liable under an agency theory for the actions of its subsidiary under CEA Section 2(a)(1)(B).  The court in *Natural Gas I* rejected the notion of holding a corporate parent liable for the acts of its subsidiary under Section 2(a)(1)(B). *Natural Gas I,* 337 F. Supp. 2d at 515.  Noting that Section 2(a)(1)(B) is based on the common law doctrine of respondeat superior, the Court emphasized the "equally well-established principles limiting piercing a corporate veil."  *Id.*  The Court held that agency requires more than "mere ownership" by the parent of the subsidiary, as such allegations "lack [] in detail" and are insufficient to allege a principal-agent relationship under § 2(a)(1)(B) of the CEA.  *Id.* at 515-16.  *See also Ez-Tixz, Inc. v. Hit-Tix, Inc.*, No. 93 Civ. 3791 (CSH), 1995 WL 77589, at *6 (S.D.N.Y. Feb. 27, 1995) (stating New York law "does not recognize vicarious liability for directors, officers, agents or shareholders . . . merely because of his office") (citations omitted).  Thus, AMLP cannot be liable as a principal merely because of its non-managing member interest in Amaranth Advisors, and AGI cannot be liable as a principal merely because of its mere one percent interest in AMLP.  Further, AP and ACP do not have any ownership interest in any other Defendant.

Moreover, courts have held that sharing an associational name is not enough to allege agency between distinct legal entities.  *See Merrill Lynch Inv. Mgrs. v. OptiBase, Ltd.*, 337 F.3d 125, 130 (2d Cir. 2003) (declining to find an investment manager the principal of a broker-dealer

where: 1) the two entities were "owned and controlled" by the same company; 2) two officers of the company that owned the two entities served as officers of the investment manager; 3) the broker-dealers' brokers offered clients products offered by affiliate entities who were advised by the investment manager; 4) the investment manager marketed the entire affiliate family of companies' services; and 5) that the affiliate companies present to the public the image of a single, integrated firm). *See In re Lernout & Hauspie Sec. Litig.*, 230 F. Supp. 2d 152, 170 (D. Mass. 2002) (dismissing a securities fraud class action, and stating that "[s]everal courts have declined to treat different firms as a single entity, holding them jointly and severally liable for one another's acts, simply because they shared an associational name") (citations omitted).

Plaintiffs have not alleged any facts other than a shared associational name, parent status, and ownership interests to support alleged agency relationships among any Defendant and the Other Amaranth Entities. That is insufficient. Accordingly, Plaintiffs' Section 2(a)(1)(B) claim against the Other Amaranth Entities should be dismissed.

### 3. AP And ACP's Status As Passive Investors In The Master Fund Does Not Extend Vicarious Liability To Them

Both AP and ACP were simply shareholders in the Master Fund. It is well-established that investors are not vicariously liable for the conduct of an agent of the entity in which they invest. *See Meyer v. Holley*, 537 U.S. 280, 286 (2003) (dismissing claim that the sole shareholder and president should be held vicariously liable for alleged violations of the Fair Housing Act by a salesman acting as an agent for the corporation as there was no manifestation of consent by the shareholder and president that the agent would act *on his behalf*) (emphasis in original). *See also Ez-Tixz, Inc.*, 1995 WL 77589 at *6 (denying vicarious liability for shareholder of corporation and holding that "a stockholder is not merely by reason of his stock interest, liable at common law for any of the obligations of a corporation, whatever their

character and in whatever manner incurred") (citations omitted). Accordingly, AP and ACP cannot be held vicariously liable under an agency theory.

### C. There Is No Private Right Of Action Under CEA Section 13(b) Or Rule 166.3 And None Of The Defendants Were CFTC Registrants[14]

Count Two's control person claim under Section 13(b) of the CEA must be dismissed because that provision only creates a cause of action for the CFTC.[15] Section 13(b) of the CEA provides that any person who "controls any person who has violated any provision of this chapter or any of the rules, regulations, or orders issued pursuant to this chapter may be held liable for such violation *in any action brought by the Commission* to the exact same extent as such controlled person." CEA § 13(b), 7 U.S.C. § 13c(b) (emphasis added).

Section 13(b) is crystal clear: only the Commission, the CFTC, may assert control person liability. *See Michelson v. Merrill Lynch Pierce, Fenner & Smith, Inc.*, 619 F. Supp. 727, 739 (S.D.N.Y. 1985); *Fed. Deposit Ins. Corp.*, 1991 WL 224302 at *7 n.13 ("there is no private right of action under Section 13(b)"). Accordingly, Plaintiffs have no right of private action for control person liability under the CEA. *See Fustok v. Conticommodity Servs., Inc.*, 618 F. Supp. 1069, 1073 (S.D.N.Y. 1985) (finding no private right of action under § 13(b)).[16]

---

[14] The Other Amaranth Entities incorporate by reference the arguments made by Mr. Maounis and the Master Fund in support of dismissal of the Section 13(b) and Rule 166.3 claims.

[15] In Count Two, Plaintiffs allege that the Other Amaranth Entities are each liable as a "controlling person" under Section 4b of the CEA, 7 U.S.C. § 6(b), the CEA's anti-fraud provision. (Compl. ¶ 255). Section 4b, however, is not the control person liability section of the CEA, but the anti-fraud provision. It appears that Plaintiffs have mis-cited Section 4b, but to the extent Plaintiffs intended to assert a claim thereunder, they fail for two reasons. First, Plaintiffs have not alleged any fraud committed in connection with transactions on Plaintiffs' behalf. This is fatal because a general fraud on the market is not recognized under Section 4b. *See Korwek v. Hunt*, 646 F. Supp. 953, 972 (S.D.N.Y. 1986). Second, Plaintiffs file to satisfy Rule 9(b) as to any purported Section 4b claim. *See Kolbeck*, 923 F. Supp. at 568.

[16] Even assuming Plaintiffs could bring a control person claim under the CEA, they have failed to plead facts sufficient to sustain such a claim against the Other Amaranth Entities. In order to state a claim for control person liability under the CEA, a plaintiff must plead with particularity:

Similarly, Plaintiffs' attempt in Count Two to hold the Other Amaranth Entities individually liable as a "controlling person" under CFTC Rule 166.3, 17 C.F.R. § 166.3, fails. (Compl. ¶ 255). First, there is no private right of action for a Rule 166.3 claim. Courts in this District have held that only the CFTC can bring a claim under Rule 166.3. *See Fustok*, 618 F. Supp. at 1072-73 ("Congress' concern in limiting liability under this provision is apparent throughout the legislative debates" which make clear that "Congress did not intend [for]. . . actions of this nature to be brought by private citizens"). *See also CFTC v. Carnegie Trading Group, Ltd.,* 450 F. Supp. 2d 788, 805 (N.D. Ohio 2006) (recognizing that Rule 166.3 does not create a private right of action). Accordingly, the Rule 166.3 claim should be dismissed against the Other Amaranth Entities.

Even assuming there was a private right of action under Rule 166.3, which there is not, that rule only applies to Commission (otherwise referred to as CFTC) registrants. CFTC Rule 166.3 provides in pertinent part:

> Each **Commission registrant**, except an associated person who has no supervisory duties, must diligently supervise the handling by its partners, officers, employees, and agents . . . of all commodity interest accounts carried, operated, advised, or introduced by the registrant and all other activities of its partners, officers, employees and agents . . . relating to its business as a Commission registrant.

---

(1) an underlying violation; (2) control by the defendant generally of the operation of the entity and the power and ability to control the specific transaction; and (3) either (a) absence of good faith of the controlling person or (b) knowing inducement directly or indirectly, by the controlling person. *See CFTC v. Int'l Fin. Servs.*, 323 F. Supp. 2d 482, 504 (S.D.N.Y. 2004) (citations omitted). Plaintiffs merely assert conclusory allegations that the Other Amaranth Entities "controlled" the other Defendants, which are insufficient to state a control person claim under the CEA. *See D.H. Papasan*, 478 U.S. at 286 (the Court does not "accept as true a legal conclusion couched as a factual allegations"). Further, the Complaint is devoid of any facts demonstrating an "absence of good faith" on the part of the Other Amaranth Entities or any "knowing inducement" by the Other Amaranth Entities of any specific violation of the CEA, let alone any facts demonstrating that the Other Amaranth Entities had control over any other Defendant or had the power to control the specific trading at issue. *See Int'l Fin. Servs.*, 323 F. Supp. 2d at 504.

17 C.F.R. § 166.3 (emphasis added).  As CFTC Rule 166.3 expressly provides, only Commission

registrants can be held liable under CFTC Rule 166.3.  *See CFTC v. Commodities Fluctuations*

*Sys., Inc.*, 583 F. Supp. 1382 (S.D.N.Y. 1984) (discussing applicability of CFTC Rule 166.3 to

registrants); *see also* 17 C.F.R. 166.1 (defining registrant as "any person who is registered or

required to be registered with the Commission pursuant to the [CEA] or any rule, regulation, or

order thereunder").  Because Plaintiffs have not (and could not) allege that the Other Amaranth

Entities were Commission registrants during the Class Period, or were required to register under

the CEA, Plaintiffs' CFTC Rule 166.3 claim must be dismissed.

### III.    PLAINTIFFS' UNJUST ENRICHMENT CLAIM MUST BE DISMISSED FOR FAILURE TO PLEAD THE REQUISITE ELEMENTS[17]

Plaintiffs' unjust enrichment claim fails because Plaintiffs do not allege either a

substantial relationship between Plaintiffs and the Other Amaranth Entities, or a direct or specific

benefit by the Other Amaranth Entities at Plaintiffs' direct expense, requisites for an unjust

enrichment claim.  *See Briar-patch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d.

Cir. 2004).  First, Plaintiffs have not pled any sort of contractual or quasi-contractual relationship

or direct dealings with the Other Amaranth Entities so as to allege the requisite substantial

relationship.  *See Reading Int'l., Inc. v. Oaktree Capital Mgmt., LLC*, 317 F. Supp. 2d 301, 334

(S.D.N.Y. 2003); *see also Michele Pommier Models, Inc. v. Yanez*, 14 F. Supp. 2d 331, 338

(S.D.N.Y. 1998).

Further, Plaintiffs do not allege that the Other Amaranth Entities are in possession of

money or property that rightfully belongs to them.  In order for Plaintiffs to survive a motion to

---

[17]  The Other Amaranth Entities incorporate by reference the arguments made by Defendant Maounis and the Master Fund in support of dismissal of Plaintiffs' unjust enrichment claim and as to why disgorgement is inappropriate, as well as the arguments made by AIL as to how the CEA preempts Plaintiffs' unjust enrichment claim.

dismiss, they must allege, in more than mere conclusory terms, how the alleged benefit to Defendants came at Plaintiffs' direct expense, and they have failed to do so.  *See In re Bayou Hedge Funds Inv. Litig.*, 472 F. Supp. 3d 528, 532 (S.D.N.Y. 2007) (dismissing unjust enrichment claim as it only alleged in a conclusory manner that the defendants were unjustly enriched and did not plead that defendants received any money from the plaintiffs during the class period).  In fact, as Plaintiffs concede, Amaranth Advisors lost money on their NYMEX trades (Compl. ¶¶ 170-71), so it is difficult to see how any Defendant is in possession of money that belongs to Plaintiffs.  Moreover, Plaintiffs' recitation of facts upon which general manipulation of market price could be found is not enough to adequately allege that the enrichment came at Plaintiffs' expense.  *See Mina Inv. Holdings Ltd. v. Lefkowitz*, 51 F. Supp. 2d 486 (S.D.N.Y. June 15, 1999) (holding that the plaintiffs' allegations of facts upon which general dilution in stock price (due to the defendants' unlawful acts) could be found was not enough to adequately allege that the enrichment came at the plaintiff-shareholders' expense).  At the very *most*, this is what Plaintiffs have done in their Complaint.  Therefore, Plaintiffs have failed to plead a claim for unjust enrichment against the Other Amaranth Entities.[18]

Finally, Plaintiffs' request that the Court order disgorgement against the Other Amaranth Entities would be inequitable because none of the entities are a wrongdoer and holding them liable would serve no deterrent purpose.  The Other Amaranth Entities are simply shareholders, a

---

[18] Because Plaintiffs' fail to state a claim for unjust enrichment, their request for a constructive trust also fails.  *In re First Cent. Fin. Corp.*, 377 F.3d 209, 212 (2d Cir. 2004) (finding request for a constructive trust improper as Plaintiffs fail to establish an unjust enrichment).  Even if the Court finds that Plaintiffs have plead a claim for unjust enrichment, the request still fails as there is no confidential or fiduciary relationship between Plaintiffs and the Other Amaranth Entities, or a transfer in reliance on any promise between Plaintiffs and the Other Amaranth Entities, factors relevant in determining whether to impose a constructive trust.  *See Martha Graham School and Dance Found., Inc. v. Martha Graham Ctr. of Contemporary Dance, Inc.*, 380 F.3d 624, 646 (2d Cir. 2004).  The Other Amaranth Entities join in the argument of Amaranth Advisors on this point.  *See* Amaranth Advisors Mem. at Section V.

holding entity, and a service provider. With respect to this point, the Other Amaranth Entities

adopt the arguments in the Memorandum of Law in Support of Motion to Dismiss the Corrected

Consolidated Class Action Complaint filed by the Master Fund and respectfully refer the Court

to that brief.

## Conclusion

For all the foregoing reasons, and those stated in the briefs submitted by the other Defendants, the Other Amaranth Entities respectfully request that this Court dismiss the Complaint in its entirely with prejudice and grant such other relief as this Court deems just and proper.[19]

Dated: New York, New York
      April 28, 2008

Respectfully submitted,

**WINSTON & STRAWN LLP**

By: /s/ David E. Mollón

    David E. Mollón (DM-5624)
    Steven M. Schwartz (SS-4216)
    dmollon@winston.com
    sschwartz@winston.com
    200 Park Avenue
    New York, New York 10166
    (212) 294-6700

    Stephen J. Senderowitz
    Kristen V. Grisius
    Gretchen A. Vetter
    ssenderowitz@winston.com
    kgrisius@winston.com
    gvetter@winston.com
    35 West Wacker Drive
    Chicago, IL 60601
    (312) 558-5600

    *Attorneys for Defendants Amaranth Capital Partners LLC, Amaranth Group Inc., Amaranth Management Limited Partnership, and Amaranth Partners LLC*

---

[19] The Complaint should be dismissed in its entirety with prejudice as to the Other Amaranth Entities because Plaintiffs already have had the benefit of pre-Complaint information and an opportunity to amend. The Other Amaranth Entities join in the argument of Amaranth Advisors on this point. *See* Amaranth Advisors Mem. at pp. 5-6.