**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE: AMARANTH NATURAL GAS COMMODITIES LITIGATION | MASTER FILE NO. 07 Civ. 6377 (SAS) |
| | **ECF Case** |
| This Document Relates To: | |
| ALL ACTIONS | |

## MEMORANDUM OF LAW OF DEFENDANT NICHOLAS M. MAOUNIS IN SUPPORT OF HIS MOTION TO DISMISS THE CORRECTED CONSOLIDATED COMPLAINT

HELLER EHRMAN LLP

Geoffrey F. Aronow (*pro hac vice*)
geoffrey.aronow@hellerehrman.com
Thomas S. Kimbrell (*pro hac vice*)
thomas.kimbrell@hellerehrman.com
1717 Rhode Island Avenue, NW
Washington, DC 20036
(202) 912-2000 - Telephone
(202) 912-2020 - Facsimile

Richard S. Goldstein (RG-9560)
richard.goldstein@hellerehrman.com
Andrew Levine (AL-3552)
andrew.levine@hellerehrman.com
Times Square Tower
7 Times Square
New York, NY 10036
(212) 832-8300 - Telephone
(212) 763-7600 - Facsimile

*Attorneys for Defendant Nicholas M. Maounis*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... iii

PRELIMINARY STATEMENT ..................................................................................1

ARGUMENT ..............................................................................................................4

    I.      The Relevant Standard Of Pleading...........................................................4

    II.    The Manipulation Claim Fails Because Plaintiffs Do Not Properly Allege That Mr. Maounis Played Any Role In The Supposed Manipulation. ....................5

        A.    The Complaint Improperly Offers only Conclusory, Group Allegations Against Mr. Maounis with Regard to the Alleged Manipulation. .........................................................................................5

        B.    Plaintiffs Allege only that Mr. Maounis Was an Officer of Amaranth, Which Is Insufficient to Sustain a Manipulation Claim.............7

    III.   Plaintiffs' Various Secondary Liability Claims Fall Short For Failure To Plead Sufficient Facts Or Because Plaintiffs Lack Standing To Bring Them. .........................................................................................................8

        A.    Plaintiffs Have Not Alleged Any of the Necessary Elements of an Alter Ego Claim. .....................................................................................8

        B.    Plaintiffs Fail to State a Claim Against Mr. Maounis Under Section 2(a)(1)(B) of the CEA Because They Do Not Allege the Necessary Elements of Agency, and Improperly Seek to Evade the Legal Standards for Piercing the Corporate Veil.......................................12

            (1)    The Complaint Does Not Allege a Principal-Agent Relationship Between Mr. Maounis and Any Other Defendant.........................................................................................12

            (2)    Plaintiffs May Not Make an End Run Around the Corporate Form by Asserting Agency Liability Under the CEA...............................................................................................14

            (3)    The Aiding and Abetting Claim Must Be Dismissed for Failure to Allege Any of the Necessary Elements. .........................16

C.      The "Control Person" Claim Under Section 13(b) of the CEA Fails Because that Provision Expressly Applies only to Actions Brought by the CFTC.................................................................18

D.      The Complaint Does Not State a Claim Against Mr. Maounis Under CFTC Rule 166.3 Because Mr. Maounis Was Not a Commission Registrant, and There Is No Private Right of Action Under that Rule. .......................................................................19

E.      The Unjust Enrichment Claim Must Be Dismissed Because Plaintiffs Fail to Allege Any Direct Benefit or a Quasi-Contractual Relationship with Mr. Maounis. ..............................................20

        (1)     The Complaint Does Not Allege the Receipt of Any Direct Benefit by Mr. Maounis at Plaintiffs' Expense. ..........................21

        (2)     The Complaint Fails to Allege the Necessary Quasi-Contractual Relationship Between Plaintiffs and Mr. Maounis..........................................................................22

F.      The Complaint Should Be Dismissed with Prejudice with Respect to Mr. Maounis...........................................................................24

**CONCLUSION** .........................................................................................**25**

## TABLE OF AUTHORITIES

**Page**

### Federal Cases

*Abbatiello v. Monsanto Co.*,
    522 F. Supp. 2d 524 (S.D.N.Y. 2007) ........................................................................... 23

*Accuimage Diagnostics Corp. v. Terarecon, Inc.*,
    260 F. Supp. 2d 941 (N.D. Cal. 2003) .......................................................................... 22

*Am. Fuel Corp. v. Utah Energy Dev. Co.*,
    122 F.3d 130 (2d Cir. 1997) ............................................................................................ 9

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
    493 F.3d 87 (2d Cir. 2007) .............................................................................................. 4

*Bangkok Crafts Corp. v. Capitolo di San Pietro in Vaticano*
    331 F. Supp. 2d 247 (S.D.N.Y. 2004) ........................................................................... 22

*Bell Atlantic Corp. v. Twombly*,
    __ U.S. __, 127 S. Ct. 1955 (2007) .......................................................................... 4, 7, 8

*Bennett v. E.F. Hutton Co., Inc.*,
    597 F. Supp. 1547 (D.C. Ohio 1984) ............................................................................ 20

*Benfield v. Mocatta Metals Corp.*,
    No. 91-Civ-8255, 1992 U.S. Dist. LEXIS 3031 (S.D.N.Y. Mar. 13, 1992) .............. 16. 17

*Bosco v. Serhant*,
    836 F.2d 271 (7th Cir. 1987) ........................................................................................ 17

*Browning-Ferris Indus. of Ill. v. Ter Maat*,
    195 F.3d 953 (7th Cir. 1999) ..................................................................................... 9, 15

*Brumbelow v. Law Offices of Bennett and Deloney, P.C.*,
    372 F. Supp. 2d 615 (D. Utah 2005) ............................................................................. 22

*Cabrera v. Jakabovitz*,
    24 F.3d 372 (2d Cir. 1994) ...................................................................................... 12, 13

*Christopher v. Harbury*,
    536 U.S. 403 (2002) ........................................................................................................ 8

*Cohen v. Standard Bank Inv. Corp.*,
No. 87 Civ. 3802 (SAS), 1998 WL 782024 (S.D.N.Y. Nov. 6, 1998) ............................ 14

*Commodity Futures Trading Comm'n v. Carnegie Trading Group, Ltd.*,
450 F. Supp. 2d 788 (N.D. Ohio 2006) ............................................................................ 20

*CompuDyne Corp. v. Shane*,
453 F. Supp. 2d 807 (S.D.N.Y. 2006) ............................................................................. 21

*Czech Beer Imps., Inc. v. C. Haven Imps., LLC*,
No. 04 Civ. 2270, 2005 WL 1490097 (S.D.N.Y. June 23, 2005) .................................... 23

*Damato v. Hermanson*,
153 F.3d 464 (7th Cir. 1998) ................................................................................... 16, 18

*EED Holdings v. Palmer Johnson Acquisition Corp.*,
228 F.R.D. 508 (S.D.N.Y. 2005) ............................................................................. 10, 11

*Ez-Tixz, Inc. v. Hit-Tix, Inc.*,
No. 93 Civ. 3791, 1995 WL 77589 (S.D.N.Y. Feb. 27, 1995) ........................................ 16

*Fed. Deposit Ins. Corp. v. FSI Futures, Inc.*,
No. 88 Civ. 0906, 1991 WL 224302 (S.D.N.Y. Oct. 16, 1991) ...................................... 19

*Feitshans v. Kahn*,
No. 06 Civ. 2125, 2007 WL 2438411 (S.D.N.Y. Aug. 22, 2007) ..................................... 9

*Fidenas AG v. Honeywell Inc.*,
501 F. Supp. 1029 (S.D.N.Y. 1980) ................................................................................. 15

*Foman v. Davis*,
371 U.S. 178 (1962) ........................................................................................................ 24

*Fustok v. Conticommodity Servs., Inc.*,
618 F. Supp. 1069 (S.D.N.Y. 1985) ........................................................................... 19, 20

*Gabriel Capital, L.P. v. NatWest Fin., Inc.*,
122 F. Supp. 2d 407 (S.D.N.Y. 2000) ............................................................................. 11

*Gristede's Foods, Inc. v. Unkechauge Nation*,
532 F. Supp. 2d 439 (E.D.N.Y. 2007) ............................................................................. 23

*Grossman v. Citrus Assocs. of N.Y. Cotton Exch., Inc.*,
706 F. Supp. 221 (S.D.N.Y. 1989) ..................................................................................... 5

*Guttman v. CFTC*,
197 F.3d 33 (2d Cir. 1999) .............................................................................................. 12

*Haskin v. R.J. Reynolds Tobacco Co.*,
    995 F. Supp. 1437 (M.D. Fla. 1998) ................................................................ 6

*Hirsch v. Arthur Andersen & Co.*,
    72 F.3d 1085 (2d Cir. 1995) ................................................................... 2, 4

*Hunt v. Enzo Biochem, Inc.*,
    530 F. Supp. 2d 580 (S.D.N.Y. 2008) ...................................................... 5, 14

*IIT v. Cornfeld*,
    619 F.2d 909 (2d Cir. 1980) ..................................................................... 17

*In re Acushnet River & New Bedford Harbor Proceedings*,
    675 F. Supp. 22 (D. Mass. 1987) .............................................................. 9

*In re Bayou Hedge Funds Inv. Litig.*,
    472 F. Supp. 2d 528 (S.D.N.Y. 2007) .................................................. 21, 22

*In re Crude Oil Commodity Litig.*,
    No. 06 Civ. 6677, 2007 WL 1946553 (S.D.N.Y. June 28, 2007) ................... 4, 5, 6

*In re Currency Conversion Fee Antitrust Litig.*,
    265 F. Supp. 2d 385 (S.D.N.Y. 2003) .................................................. 8, 10

*In re Indiana Farm Bureau Coop. Assoc.*,
    CFTC No. 75-14, 1982 WL 30249 (C.F.T.C. Dec. 17, 1982) ........................... 7

*In re Motel 6 Secs. Litig.*,
    161 F. Supp. 2d 227 (S.D.N.Y. 2001) ...................................................... 23

*In re Natural Gas Commodity Litig.*,
    337 F. Supp. 2d 498 (S.D.N.Y. 2004) ........................................ 12, 13, 15, 16

*In re Richardson Sec., Inc.*,
    No. 78-10, 1981 CFTC LEXIS 629 (C.F.T.C. Jan. 27, 1981) ......................... 17

*In re Sotheby's Holdings, Inc. Sec. Litig.*,
    No. 00 Civ. 1041, 2000 WL 1234601 (S.D.N.Y. Aug. 31, 2000) .................... 7

*In the Matter of Arbitration between Holborn Oil Trading Ltd. and Interpetrol Bermuda Ltd.*,
    774 F. Supp. 840 (S.D.N.Y. 1991) ........................................................... 9

*Iqbal v. Hasty*,
    490 F.3d 143 (2d Cir. 2007) ..................................................................... 16

*Kashfi v. Phibro-Salomon*,
    628 F. Supp. 727 (S.D.N.Y. 1986) ........................................................... 15

*Kaye v. Grossman*,
   202 F.3d 611 (2d Cir. 2000)..................................................................... 21

*Kolbeck v. LIT Am. Inc.*,
   923 F. Supp. 557 (S.D.N.Y. 1996)....................................................... 11, 14

*Kramer v. Pollock-Krasner Found.*,
   890 F. Supp. 250 (S.D.N.Y. 1995)............................................................ 21

*Krause v Forex Exch. Mkt., Inc.*,
   356 F. Supp. 2d 332 (S.D.N.Y. 2005)..................................................... 4, 16

*Lamson v. LFG, LLC*,
   No. 00C3094, 2000 WL 33539382 (N.D. Ill. June 22, 2000) ......................... 20

*Landy v. Mitchell Petroleum Tech. Corp.*,
   734 F. Supp. 608 (S.D.N.Y. 1990).............................................................. 11

*Lerner v. Fleet Bank, N.A.*,
   459 F.3d 273 (2d Cir. 2006)....................................................................... 5

*Levine v. Citibank*,
   No. 07 Civ. 2032, 2008 WL 220282 (S.D. Cal. Jan. 24, 2008) ....................... 8

*Lightfoot v. Union Carbide Corp.*,
   110 F.3d 898 (2d Cir. 1997)..................................................................... 23

*Lincoln Diversified Sys., Inc. v. Mangos Plus, Inc.*,
   No. 98 Civ. 5593, 2000 WL 1880338 (S.D.N.Y. Dec. 27, 2000)...................... 9

*Meyer v. Holley*,
   537 U.S. 280 (2003).......................................................................... 13, 16

*Michelson v. Merrill Lynch Pierce, Fenner & Smith, Inc.*,
   619 F. Supp. 727 (S.D.N.Y. 1985)............................................................. 18

*Murray v. Miner*,
   74 F.3d 402 (2d Cir. 1996)........................................................................ 9

*Natowitz v. Mehlman*,
   542 F. Supp. 674 (S.D.N.Y. 1982)............................................................... 6

*Nuevo Mundo Holdings v. PriceWaterhouseCoopers, LLC*,
   No. 03 Civ. 0613, 2004 WL 112948 (S.D.N.Y. Jan. 22, 2004)............ 12, 13, 14

*Reading Int'l, Inc. v. Oaktree Capital Mgmt. LLC*,
   317 F. Supp. 2d 301 (S.D.N.Y. 2003)..................................................... 22, 23

*Redtail Leasing, Inc. v. Bellezza*,
    No. 95 Civ. 5191, 1997 WL 603496 (S.D.N.Y. Sept. 30, 1997) ..................................... 23

*Rella v. N. Atl. Marine, Ltd.*,
    No. 02 Civ. 8573, 2004 WL 1418021 (S.D.N.Y. June 23, 2004) .................................... 16

*Rieger v. Drabinksy (In re Livent, Inc. Noteholders Sec. Litig.)*,
    151 F. Supp. 2d 371 (S.D.N.Y. 2001) ............................................................................... 4

*Royal Indus., Ltd. v. Kraft Foods, Inc.*,
    926 F. Supp. 407 (S.D.N.Y. 1996) ................................................................................... 15

*Sahu v. Union Carbide Corp.*,
    No. 04 Civ. 8825, 2006 WL 3377577 (S.D.N.Y. Nov. 20, 2006) ............................ 10, 15

*Sasso v. Cervoni*,
    985 F.2d 49 (2d Cir. 1993) ............................................................................................... 16

*Shields v. Citytrust Bancorp., Inc.*,
    25 F.3d 1124 (2d Cir. 1994) ........................................................................................... 5, 7

*Smith v. Local 819 I.B.T. Pension Plan*,
    291 F.3d 236 (2d Cir. 2002) ...................................................................................... 4, 7, 8

*Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.*,
    171 F.3d 912 (3d Cir. 1999) ............................................................................................ 21

*Tatum v. Legg Mason Wood Walker, Inc.*,
    83 F.3d 121 (5th Cir. 1996) ............................................................................................. 17

*Thorncock v. Kinderhill Corp.*,
    749 F. Supp. 513 (S.D.N.Y. 1990) .................................................................................. 17

*Transamerica Mortgage Advisors, Inc. (TAMA) v. Lewis*,
    444 U.S. 11 (1979) ........................................................................................................... 18

*U.S. v. Bestfoods*,
    524 U.S. 51 (1998) ............................................................................................................. 9

*U.S. v. Lorantffy Care Center*,
    999 F. Supp. 1037 (N.D. Ohio 1998) .............................................................................. 16

*Weber v. E.D. & F. Man Int'l, Inc.*,
    No. 97 C 7518, 1999 U.S. Dist. LEXIS 495 (N.D. Ill. Jan. 12, 1999) ............................ 17

*Zeke N' Zoe Corp. v. Zeke N' Zeke LLC*,
    No. 01 Civ. 4780, 2002 WL 72947 (S.D.N.Y. Jan. 18, 2002) ............................................ 9

*Zinaman v. USTS New York, Inc.,*
   798 F. Supp. 128 (S.D.N.Y. 1992) .................................................................................. 10

## State Cases

*McKesson Corp. v. Green,*
   610 S.E.2d 54 (Ga. 2005) ................................................................................................ 22

*McMillan v. Weinberg,*
   No. 98-3568, 1999 WL 706707 (Mass. Super. Ct. Aug. 17, 1999) .................................. 22

*Modica v. Modica,*
   791 N.Y.S.2d 134 (2d App. Div. 2005) ............................................................................ 24

*Morris v. N.Y. State Dep't of Taxation and Fin.*, 82 N.Y.2d 135, 603 N.Y.S.2d 807 (1993) ....... 9

## Statutes

7 U.S.C. § 1 ............................................................................................................................... 1

7 U.S.C. § 2(a)(1)(B) ................................................................................................... 12, 13, 15

7 U.S.C. §13c(b) ............................................................................................................. 3, 18, 19

## Rules

17 C.F.R. § 166.1. ................................................................................................................... 19

17 C.F.R. § 166.3. ......................................................................................................... 3, 19, 20

Fed. R. Civ. P. 8 ......................................................................................................... 4, 8, 11, 14

Fed. R. Civ. P. 9(b) .......................................................................................................... Passim

Fed. R. Civ. P. 11 .................................................................................................................... 2

Fed. R. Civ. P. 12(b)(6) ............................................................................................................ 7

## Other Authorities

Geoffrey C. Rapp, *Preserving LLC Veil Piercing:  A Response to Bainbridge,* 31 J. Corp. L.
   1063, 1063 (2006) ........................................................................................................... 9

viii

Phillip McBridge Johnson & Thomas Lee Hazen, *Derivatives Regulation,* § 5.10[11] (2004) ... 19

PSI Staff Report, Excessive Speculation in the Natural Gas Markets
    (June 25, 2007 & July 9, 2007), available at
        http://levin.senate.gov/newsroom/supporting/2007/PSI.Amaranth.062507.pdf .............. 18

Restatement (Second) of Agency § 1, cmt. b (1958) .................................................................. 12

Stephen B. Presser, *Piercing the Corporate Veil* § 3:4 (1990) ...................................................... 9

## PRELIMINARY STATEMENT

In a complaint running 77 pages and 271 numbered paragraphs, Plaintiffs fail to allege a single fact that supports a claim that Nicholas Maounis ever manipulated a NYMEX natural gas futures contract, or knew of, counseled, contributed to, or suspected any such manipulation by others. Plaintiffs' inability to assert any fact connecting Mr. Maounis to the alleged manipulation is not surprising, in light of the fact that none of the legislative and regulatory reports, orders, and complaints filed by government agencies and relied upon by Plaintiffs in drafting their Consolidated Corrected Class Action Complaint ("Complaint") asserted that Mr. Maounis should be charged with any offense or found him to be culpable. *See* ¶¶ 4, 5, 271.[1]

None of the allegations in the Complaint that do relate to Mr. Maounis begin to support a claim for manipulation, or for secondary liability for manipulation. The Complaint alleges that Mr. Maounis was "owner," "founder," "Chief Executive Officer," "Chief Investment Officer," and "Managing Member," of some of the "Amaranth Defendants." ¶¶ 25, 29. Otherwise, the Complaint offers only bare legal conclusions and generalities regarding Mr. Maounis. Rather than pleading facts, the Complaint lumps together eight legally distinct corporations and three individuals, claiming that these so-called "Amaranth Defendants" manipulated the prices of NYMEX natural gas futures contracts. ¶¶ 1-2, 33. It is well-established, however, that this sort of conclusory group-pleading cannot state a claim for relief under the Commodity Exchange Act, 7 U.S.C. §1 *et seq.* ("CEA").[2]

---

[1] Citations to Plaintiffs' Consolidated Class Action Complaint shall take the form "¶ __."

[2] In Paragraph 73 of the Complaint, Plaintiffs allege that "Amaranth — per the trading decisions of Nicholas Maounis, Brian Hunter, Matthew Donohue and other Amaranth agents and control persons — held and steadily added to massive natural gas contract positions on NYMEX

*(Footnote continued)*

Nor does the Complaint present facts in support of Plaintiffs' various alternative claims against Mr. Maounis in Counts II and III of the Complaint. In what appears to be an inartful attempt to plead an "alter ego" theory of liability, the Complaint concludes that Mr. Maounis "directed" the Amaranth Defendants, "an association-in-fact, which operated as a single entity under [his] direction." ¶ 29. If this is meant to assert an alter ego claim, it must be dismissed because the Complaint fails to offer a single fact to support this conclusion. Plaintiffs more clearly claim that Mr. Maounis should be found liable as a "principal of the Amaranth Defendants" (¶ 250), but offer no facts to support a finding that a principal-agent relationship existed. The allegation is an apparent effort to end-run improperly around the requirements applicable to their failed "piercing" theory of liability. Plaintiffs also cite the aiding and abetting provision of the CEA but, again, fail to allege a single fact suggesting that Mr. Maounis knew of the alleged manipulation by others, intended to aid that manipulation, or took any act to further it — all required elements of an aiding and abetting claim. Finally, Plaintiffs allege in Count III that Mr. Maounis was unjustly enriched (¶ 10), but, yet again, fail to allege the necessary facts to support such a claim, namely the required connection between Plaintiffs' alleged losses and Mr.

---

and ICE." Mr. Maounis understands this allegation as merely a restatement of the claim that he was CEO and CIO of the company, because he is unaware of any basis for Plaintiffs to allege any specific involvement in the "trading decisions" relating to natural gas futures. Any other intended meaning of this allegation would face serious problems under the requirements of Fed. R. Civ. P. 11. Indeed, none of the evidentiary sources explicitly relied upon by Plaintiffs in drafting the Complaint suggest that Mr. Maounis had any involvement in trading natural gas futures. ¶ 271. Furthermore, any such allegation would be wholly inconsistent with the more specific allegations of the Complaint, which make clear that Mr. Maounis did not make trading decisions on natural gas futures contracts. *See, e.g.*, ¶ 102; *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1092 (2d Cir. 1995) (where generalized allegations about a defendant are belied by more specific allegations, the Court need not credit them). In any event, having a large number of natural gas futures positions does not, under well-established precedent, state a claim for manipulation under the CEA. In this regard, Mr. Maounis joins in and incorporates by reference the argument in the memorandum in support of the motion to dismiss of Amaranth Advisors that simply holding and trading large positions in a market cannot form the basis of a claim of manipulation. *See infra* footnote 4.

Maounis's alleged gain, or why Plaintiffs would be entitled to the quasi-contractual remedy of unjust enrichment when they had no direct dealings with Mr. Maounis, as the law requires.

Plaintiffs also allege two causes of action against Mr. Maounis that they are not entitled to bring: for control person liability under Section 13(b) of the CEA, and for failure to supervise under Title 17, Section 166.3 of the Code of Federal Regulations ("Rule 166.3"). Both provisions grant exclusive enforcement power to the Commodity Futures Trading Commission ("CFTC") and thus do not support private causes of action. Moreover, Rule 166.3 applies only to CFTC registrants, which Mr. Maounis was not.

Because Plaintiffs have offered no facts in support of any of their claims for which there is a private cause of action, and assert claims for which there is no private cause of action, the Complaint must be dismissed in its entirety as to Mr. Maounis. The dismissal should be with prejudice because Plaintiffs already have replead the Consolidated Complaint and had ample opportunity to seek permission to replead again, and because the facts do not support a claim against Mr. Maounis for any alleged manipulation, as reflected by the work of the U.S. Senate, CFTC, and the FERC.[3]

---

[3] Pursuant to Rule III.B of the Individual Rules and Procedures of Judge Shira A. Scheindlin, counsel for defendant Nicholas M. Maounis certifies that, on March 31, 2008, counsel sent a letter to Plaintiffs' counsel stating Mr. Maounis's intention to file the instant motion and summarizing the arguments contained herein. On April 3, Plaintiffs responded, contended that the arguments in the March 31 letter were without merit, and refused to withdraw any of their asserted claims against Mr. Maounis.

## ARGUMENT

### I.    The Relevant Standard Of Pleading

Even under the Fed. R. Civ. P. 8 ("Rule 8") standard of pleading, a "plaintiff must provide the grounds upon which [its] claim rests through factual allegations sufficient to 'raise a right to relief above the speculative level.'"  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir. 2007).  Moreover, it is well-established that "[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002); *Rieger v. Drabinsky (In re Livent, Inc. Noteholders Sec. Litig*.), 151 F. Supp. 2d 371, 404 (S.D.N.Y. 2001).  As the Supreme Court recently reiterated in discussing the Rule 8 standard, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, __ U.S. __**,** 127 S. Ct. 1955, 1964-65 (2007).  The Court also need not accept Plaintiff's inferences if they are unsupported by the specific facts set forth in the Complaint. *Hirsch v. Arthur Andersen & Co*., 72 F.3d 1085, 1092 (2d Cir. 1995).

Here, Plaintiffs face an even greater hurdle.  For the reasons set forth in Amaranth Advisors and the Other Amaranth Defendants' motions to dismiss, the heightened pleading standards of Rule 9(b) apply to each of the claims set forth in the Complaint.  *See, e.g., ATSI Commc'ns Inc.,* 493 F.3d at 101 ("[b]ecause a claim for market manipulation is a claim for fraud, it must be pled with particularity under Rule 9(b)"); *In re Crude Oil Commodity Litig.*, No. 06 Civ. 6677, 2007 WL 1946553, at *5 (S.D.N.Y. June 28, 2007) (dismissing complaint alleging price manipulation under the CEA for failing to meet 9(b)'s heightened pleading standard); *see also Krause v Forex Exch. Mkt., Inc.*, 356 F. Supp. 2d 332, 338-39 (S.D.N.Y. 2005) (holding that

"Rule 9(b) applies also to claims of aiding and abetting fraud").

To withstand a motion to dismiss under Rule 9(b), a complaint must state the "circumstances constituting fraud … with particularity," and "allege facts that give rise to a *strong* inference of fraudulent intent." *Shields v. Citytrust Bancorp., Inc.* 25 F.3d 1124, 1127-28 (2d Cir. 1994) (emphasis added); *Lerner v. Fleet Bank, N.A.,* 459 F.3d 273, 290-91 (2d Cir. 2006). Of particular importance in evaluating Plaintiffs' Complaint, in which "multiple defendants are alleged to have committed fraud," is that the "complaint must specifically allege the fraud perpetrated by each defendant, and 'lumping' all defendants together fails to satisfy the particularity requirement." *In re Crude Oil*, 2007 WL 1946553, at *6; *see also Hunt v. Enzo Biochem, Inc.*, 530 F. Supp. 2d 580, 601 (S.D.N.Y. 2008) ("Where multiple defendants are involved in the alleged fraud, it is especially important that the fraud be particularized as to each of them."). This is just what Plaintiffs here have failed to do with regard to Mr. Maounis. By lumping him in with the other defendants in broad, conclusory allegations, Plaintiffs apparently hope that their inability to make legally adequate allegations with regard to Mr. Maounis will go unnoticed.

## II. **The Manipulation Claim Fails Because Plaintiffs Do Not Properly Allege That Mr. Maounis Played Any Role In The Supposed Manipulation.**

### A. **The Complaint Improperly Offers only Conclusory, Group Allegations Against Mr. Maounis with Regard to the Alleged Manipulation.**

Count I of the Complaint, for manipulation, must be dismissed because the Complaint includes no facts setting forth Mr. Maounis's role in the alleged manipulation. Where, as here, the "complaint simply says nothing about [the individual defendant], except in the most general of terms in those 'kitchen sink' portions of the pleading where everyone is alleged to have done everything in violation of the [law,]" the complaint must be dismissed. *Grossman v. Citrus*

*Assocs. of N.Y. Cotton Exch., Inc*., 706 F. Supp. 221, 232 (S.D.N.Y. 1989) (dismissing manipulation claim under the CEA for failure to state a claim or, in the alternative, under Rule 9(b)); *see also In re Crude Oil*, 2007 WL 1946553, at *6; *Haskin v. R.J. Reynolds Tobacco Co.,* 995 F. Supp. 1437, 1439 (M.D. Fla. 1998); *Hunt*, 530 F. Supp. 2d at 601.  As in *Grossman*, the Complaint merely asserts, collectively and conclusively, that the "Amaranth Defendants" (defined collectively to include futures contract traders Hunter and Donohoe, eight legally distinct corporate entities, and Mr. Maounis) manipulated the price of natural gas futures contracts between February 16, 2006, and September 28, 2006.  ¶¶ 1-2, 33.  The substantive allegations thereafter in the Complaint all refer collectively to the "Amaranth Defendants," "Amaranth," or to defendants Hunter and Donohoe.  None of the substantive allegations discuss Mr. Maounis, describe his role or assert any action he took in furtherance of the alleged manipulation.  In the few instances where the Complaint focuses on the alleged manipulation, it never once mentions Mr. Maounis's name, much less offers facts as to his involvement.  *See, e.g.*, ¶ 102 ("Amaranth's head natural gas trader, defendant Hunter, along with his executing broker, defendant Donohoe were primary actors in the manipulation of the settlement prices [] for the March 2006, April 2006, and May 2006 contracts"); *see also* ¶¶ 100-149 (setting forth the alleged manipulation of the April, May, and June 2006 contracts).

As this Court has recognized, because Plaintiffs have "sue[d numerous] defendants, [they] ha[ve] an obligation to allege specifically the fraud perpetrated by each defendant. Plaintiff has failed to meet this obligation.  [The complaint] is replete with vague accusations against 'the defendants' without reference to the specific parties or the specific acts." *Natowitz v. Mehlman*, 542 F. Supp. 674, 676 (S.D.N.Y. 1982).  Those words apply precisely to this Complaint with regard to its allegations of manipulation against Mr. Maounis.  Therefore, the

manipulation claim against him must be dismissed.  *Id.* [4]

### B.    Plaintiffs Allege only that Mr. Maounis Was an Officer of Amaranth, Which Is Insufficient to Sustain a Manipulation Claim.

As noted above, *supra* pp. 5-6, other than the "group" allegations, Plaintiffs assert only

that Mr. Maounis is the "founder," "Chief Executive Officer and Managing Member of

Amaranth Advisors," and the "owner" of Amaranth Group, Inc.  ¶¶ 25, 29.  Of course, position

or ownership alone is not enough to state a claim for manipulation.  "[B]oilerplate allegations …

based solely on [a defendant's] board membership or executive positions are insufficient …."  *In*

*re Sotheby's Holdings, Inc. Sec. Litig.,* No. 00 Civ. 1041, 2000 WL 1234601, at *7 (S.D.N.Y.

Aug. 31, 2000); *see also infra* Part III.A (allegations of ownership insufficient to state alter ego

claim).  Likewise, the suggestions that Mr. Maounis had "*de jure* and *de facto* control over," or

that he was the "principal" of the "Amaranth Defendants," ¶¶ 29, 250, are mere legal conclusions

---

[4]    Mr. Maounis joins in, and incorporates by reference, the arguments made by co-defendants Amaranth Advisors and the Other Amaranth Entities as to the applicability of Federal Rule of Civil Procedure 9(b) to the Complaint, Plaintiffs' failure to allege intent adequately under Rules 9(b) or 12(b)(6), Plaintiffs' lack of standing to assert their claim based on the alleged manipulation of settlement prices, and Plaintiffs' failure to allege any manipulative conduct, the ability to manipulate the market, or to cause artificial prices.  In particular, the Complaint fails to connect Mr. Maounis in any way to the alleged manipulation, much less plead facts supporting a claim that he acted with the specific intent to manipulate the price of natural gas futures contracts, an essential element of Plaintiffs' manipulation claim.  *In re Indiana Farm Bureau Coop. Assoc.*, CFTC No. 75-14, 1982 WL 30249, at *4 (C.F.T.C. Dec. 17, 1982).  This failure is fatal whether the Court applies Rule 9(b), which requires Plaintiffs to "allege facts that give rise to a strong inference of fraudulent intent," *see Shields,* 25 F.3d at 1127-28, or 12(b)(6)'s more lenient "plausibility standard," *see Twombly*, 127 S. Ct. at 1968.  Plaintiffs' sole, general allegation in support of their claim regarding motive or intent — that the "Amaranth Defendants" had a motive to manipulate because they were a large participant in the futures markets, *see ¶¶* 176-77 — was squarely rejected by this Court in *In re Crude Oil Litig.*, 2007 WL 1946553, at *8.  There, the Court held that the allegation that "defendants had a large presence in the crude oil market, the NYMEX oil futures and options market [was insufficient to show fraudulent intent because the allegation was a] generalized motive, one which could be imputed to any corporation with a large market presence in any commodity market."  *Id.*

and, in any event, do not provide the basis for a claim against him for manipulation. *See, e.g., Smith*, 291 F.3d at 240.

In sum, the Complaint fails to allege "enough facts to state a claim to relief that is plausible on its face" against Mr. Maounis. As to him, it is nothing more than an amalgam of conclusory or speculative allegations. *See Twombly, supra,* 127 S. Ct. at 1974. Here, as in *Twombly*, "[b]ecause the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Id.*

## III.    Plaintiffs' Various Secondary Liability Claims Fall Short For Failure To Plead Sufficient Facts Or Because Plaintiffs Lack Standing To Bring Them.

### A.    Plaintiffs Have Not Alleged Any of the Necessary Elements of an Alter Ego Claim.

Paragraph 29 of the Complaint appears to assert an "alter ego" theory of liability against Mr. Maounis. *See* ¶ 29 (alleging that Mr. Maounis "directed" the Amaranth Defendants, "an association-in-fact, which operated as a single entity under [his] direction"). If Plaintiffs intended to plead it, the alter ego claim must be dismissed because Plaintiffs have not offered any facts to support it. "[P]urely conclusory allegations cannot suffice to state a claim based on veil-piercing or alter-ego liability .…" *In re Currency Conversion Fee Antitrust Litig.*, 265 F. Supp. 2d 385, 426 (S.D.N.Y. 2003).[5]

---

[5] The ambiguity of Paragraph 29 leaves Defendants to guess whether Plaintiffs actually intend to bring a claim under an alter ego theory. In that regard, the Complaint does not set forth alter ego liability as a separate "count" for relief. Because of this ambiguity alone, the claim should be dismissed. *Christopher v. Harbury*, 536 U.S. 403, 418 (2002) (dismissing case where defendants were left to guess the cause of action). "[U]nder Fed R. Civ. P. 8, Defendant need not guess which provision of law Plaintiff is suing under, but instead must be put on fair notice of such claim(s)." *Levine v. Citibank*, No. 07 Civ. 2032, 2008 WL 220282 (S.D. Cal. Jan. 24, 2008) (dismissing complaint). The Complaint fails its most basic purpose, to "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Twombly*, 127 S. Ct. at 1964.

Courts are reluctant to pierce the corporate veil and will only do so under "extraordinary circumstances." *Murray v. Miner*, 74 F.3d 402, 404 (2d Cir. 1996). The principle of limited liability "serves the important social purpose of encouraging investment by individuals who are risk averse and therefore will not invest … in an enterprise if by doing so they expose their entire wealth to the hazards of litigation." *Browning-Ferris Indus. of Ill. v. Ter Maat*, 195 F.3d 953, 959 (7th Cir. 1999), *cert. denied*, 529 U.S. 1098 (2000). Thus, plaintiffs seeking to pierce an LLC's veil to reach its owner or principal must satisfy a "heavy burden." *See, e.g., Feitshans v. Kahn*, No. 06 Civ. 2125, 2007 WL 2438411, at *3 (S.D.N.Y. Aug. 22, 2007).

To state a claim for alter ego liability, a complaint must allege "(1) that the [defendant] exercised complete domination over the [corporate entities] with respect to the transaction[s] at issue; and (2) that such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil."[6] *Am. Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 134 (2d Cir. 1997) (citing *Morris v. N.Y. State Dep't Taxation & Fin.*, 82 N.Y.2d 135, 141, 603 N.Y.S.2d 807, 810-811 (1993).[7] "To avoid dismissal, a party seeking application of the doctrine must

---

[6] Since "federal common law draws upon state law for guidance, … the choice between state and federal [veil-piercing] law may in many cases present questions of academic interest, but little practical significance." *In re Acushnet River & New Bedford Harbor Proceedings*, 675 F. Supp. 22, 33 (D. Mass. 1987) (cited by *U.S. v. Bestfoods*, 524 U.S. 51, 64 n.9 (1998); *see also In the Matter of Arbitration between Holborn Oil Trading Ltd. and Interpetrol Bermuda Ltd.*, 774 F. Supp. 840, 844 (S.D.N.Y. 1991) (applying identical factor test applied under New York law to its federal common law veil piercing inquiry and noting that the New York and federal common law standards "converge"); Stephen B. Presser, *Piercing the Corporate Veil* § 3:4 (1990) ("In the Second Circuit, for instance, the federal common law veil piercing rules closely resemble New York's state common law rules.").

[7] The same veil-piercing test applies to LLCs as to other corporate entities. *Lincoln Diversified Sys., Inc. v. Mangos Plus, Inc.*, No. 98 Civ. 5593, 2000 WL 1880338 (S.D.N.Y. Dec. 27, 2000) (applying veil piercing analysis to alter ego claim against LLC allegedly dominated by its co-owner); *Zeke N' Zoe Corp. v. Zeke N' Zeke LLC*, No. 01-Civ-4780, 2002 WL 72947 (S.D.N.Y. Jan. 18, 2002) (same); Geoffrey C. Rapp, *Preserving LLC Veil Piercing: A Response to Bainbridge*, 31 J. Corp. L. 1063, 1063 (2006).

come forward with factual allegations as to both elements of the veil-piercing claim." *EED Holdings v. Palmer Johnson Acquisition Corp.*, 228 F.R.D. 508, 512 (S.D.N.Y. 2005).  Here, Plaintiffs have not alleged any facts in support of either element of an alter ego claim. Accordingly, the alter ego claim must be dismissed.

With respect to the first prong of the alter ego test, "complete domination over the corporate entities with respect to the transaction[s] at issue," the Complaint's conclusory allegation is that Amaranth "operated as a single entity under the direction of Defendant Maounis," and that Mr. Maounis had "*de jure* and *de facto* control over the Amaranth Defendants, each of which acted under the direction, and at the behest of, Defendant Maounis." ¶ 29.  This falls well short of alleging *facts* sufficient to establish the first element of an alter ego claim.  An "unadorned invocation of dominion and control is simply not enough." *In re Currency Conversion*, 265 F. Supp. 2d at 426.  Moreover, "mere ownership of a controlling number of shares … is never enough on its own to demonstrate the level of direct intervention necessary for veil piercing." *Sahu v. Union Carbide Corp.,* No. 04 Civ. 8825, 2006 WL 3377577, at *4 (S.D.N.Y. Nov. 20, 2006).  Accordingly, courts in this District routinely dismiss alter ego claims based on allegations nearly identical to those proffered here.  *See, e.g*., *Zinaman v. USTS New York, Inc.*, 798 F. Supp. 128, 132 (S.D.N.Y. 1992) (allegation that parent "owns and controls" subsidiary insufficient "to plead the 'control and domination' necessary to justify bringing the [parent] into this dispute"); *In re Currency Conversion*, 265 F. Supp. 2d at 426 (conclusory allegations that "bank holding company exercised such dominion and control … that it is liable … for the acts of [its] subsidiaries," and that principal "defendants were wholly owned subsidiaries of their respective bank holding companies" were unsupported by specific factual allegations).

10

Further, Plaintiffs have alleged no facts that support a finding that Mr. Maounis used the corporate form to commit a fraud or wrong against them — the second prong of the alter ego test. Plaintiffs have not offered a single factual allegation, not even a conclusory one, that Mr. Maounis had anything to do with the alleged manipulation of the settlement price at the close of the March, April, and May 2006 contracts — the only even theoretical manipulation allegations in the Complaint.[8] Plaintiffs have not offered a single factual allegation that Mr. Maounis "used" the corporate form with respect to these transactions or, indeed, that he had anything to do with the trading during the April, May and June 2006 contract closes. *See* ¶¶ 100-149 (reciting allegations relating to trading on those contracts without once mentioning Mr. Maounis). So the Complaint fails this prong of the "alter ego" pleading requirements as well. *See EED Holdings*, 228 F.R.D. at 512-13 (dismissing piercing claim against sole shareholder and director of two related entities because the complaint failed to establish that the director's domination of the entities was the means by which the wrong was done to plaintiff).

Accordingly, the Complaint lacks any support for holding Mr. Maounis liable for the alleged price manipulation on these dates under an alter ego theory or, for that matter, under any theory at all.[9]

---

[8] The allegations with regard to holding large positions do not support a claim against Mr. Maounis or anyone else. *See supra* footnote 2.

[9] Although the alter ego claim fails to satisfy even the more liberal pleading standard of Rule 8, because Plaintiffs' claims sound in fraud, the alter ego allegations must themselves meet the heightened pleading requirement of Rule 9(b). *See, e.g.*, *Gabriel Capital, L.P. v. NatWest Fin., Inc.*, 122 F. Supp. 2d 407, 434 (S.D.N.Y. 2000) (applying 9(b) to piercing claim based on securities fraud); *EED Holdings,* 228 F.R.D. at 512. Plaintiffs' conclusory allegations of control do not inform each Defendant of its alleged role in the fraud and, accordingly, do not satisfy Rule 9(b). *Kolbeck v. LIT Am. Inc.*, 923 F. Supp. 557, 569 (S.D.N.Y. 1996) ("[t]he requirement of precision applies equally when the goal is to hold defendants vicariously liable for the fraud of another"); *Landy v. Mitchell Petroleum Tech. Corp.*, 734 F. Supp. 608, 620 (S.D.N.Y. 1990) ("guilt by association is not a sufficient pleading of fraud under Rule 9(b)").

**B.    Plaintiffs Fail to State a Claim Against Mr. Maounis Under Section 2(a)(1)(B) of the CEA Because They Do Not Allege the Necessary Elements of Agency, and Improperly Seek to Evade the Legal Standards for Piercing the Corporate Veil.**

Plaintiffs' effort to state a claim against Mr. Maounis under Section 2(a)(1)(B) of the CEA, the Act's agency provision, fails for two reasons. First, the Complaint fails to provide even the most basic factual support necessary to show that Mr. Maounis, an individual investor in an LLC, was the "principal" of any of the other Defendants. Second, Plaintiffs may not use agency law to attempt to hold Mr. Maounis liable when the legal principles governing the corporate form do not allow for liability.

**(1)    The Complaint Does Not Allege a Principal-Agent Relationship Between Mr. Maounis and Any Other Defendant.**

Liability may only be imposed under Section 2(a)(1)(B) where a plaintiff shows that: (1) the primary actor was acting as an agent for the alleged principal in committing the unlawful act; and (2) the agent's acts were within the scope of his employment or office. *Guttman v. CFTC*, 197 F.3d 33, 39 (2d Cir. 1999). A party seeking to establish an agency relationship must also demonstrate the existence of three elements: "(1) the manifestation by the principal that the agent shall act for him; (2) the agent's acceptance of the undertaking; and (3) an understanding between the parties that the principal is to be in control of the undertaking." *Nuevo Mundo Holdings v. PriceWaterhouseCoopers, LLC*, No. 03 Civ. 0613, 2004 WL 112948, at * 4 (S.D.N.Y. Jan. 22, 2004); *Cabrera v. Jakabovitz*, 24 F.3d 372, 386 (2d Cir. 1994); *see also* Restatement (Second) of Agency § 1, cmt. b (1958).

Traditional agency principles apply to claims under Section 2(a)(1)(B). *See In re Natural Gas Commodity Litig.*, 337 F. Supp. 2d 498, 515 (S.D.N.Y. 2004). These traditional agency principles maintain that "in the absence of special circumstances," a corporate officer and owner

such as Mr. Maounis, "is not subject to vicarious liability for torts committed by [a corporation's] employees or agents." *Meyer v. Holley*, 537 U.S. 280, 286 (2003).  A corporate owner and officer may not be liable for an employee's acts even if they technically controlled or had the right to control an employee's actions, because the employee acts on behalf of his employer, not the owner or officer. *Id.* at 286; *see also In re Natural Gas*, 337 F. Supp. 2d at 515 (noting that "§ 2(a)(1)(B) has been used as the doctrine of respondeat superior has traditionally been applied — to hold employers liable for the wrongs of their employees in certain situations").

The Complaint does not allege any of the required elements of agency.  There is no allegation that:  (1) Mr. Maounis ever gave authority to any of the other Defendants to trade natural gas futures contracts on his behalf; (2) any other Defendant ever accepted such an undertaking; or (3) there was an "understanding" that Mr. Maounis was to be in control of the trading of natural gas futures contracts, which he had never traded himself. *Nuevo Mundo*, 2004 WL 112948, at * 4; *Cabrera,* 24 F.3d at 386.  Nor does the Complaint allege any of the special circumstances that would be necessary to allege an agency relationship between a corporate officer and owner and the corporation or its employees or agents. *Meyer*, 537 U.S. at 285-86. Indeed, the Complaint offers no allegation of any fact tending to support the conclusion that an agency relationship existed between Mr. Maounis and any other Defendant.  Instead, consistent with the rest of their allegations against Mr. Maounis, Plaintiffs offer only the barest conclusion of agency:  that the Amaranth Defendants operated "under the direction of Defendant Maounis … [who] is also liable … for the acts of his officials, agents, or other persons acting within the scope of their employment or office, including the Amaranth Defendants."  ¶ 29; *see also* ¶ 250 ("Defendant Maounis was the principal of the Amaranth Defendants .…").

13

The conclusory pleading of the agency relationship is fatal. Plaintiffs' agency claim is subject to Rule 9(b)'s heightened pleading standard. "The requirement of precision applies equally when the goal is to hold defendants vicariously liable for the fraud of another and when the agency relationship itself is allegedly part of the fraud." *Kolbeck*, 923 F. Supp. at 569. 1996). "Broad allegations [] that one defendant controlled another, or that some defendants are guilty because of their association with others, do not inform each defendant of its role in the fraud and do not satisfy Rule 9(b)." *Id*.

But Plaintiffs' wholly conclusory allegations also fail to meet even the more lenient Rule 8(a) pleading standards. "[B]ald assertions and conclusions of law will not suffice [and] a court need not accord legal conclusions, deductions or opinions couched as factual allegations [] a presumption of truthfulness." *Hunt*, 530 F. Supp. 2d at 591. "[T]o withstand defendants' motion to dismiss, [plaintiffs'] complaint must clearly and specifically articulate allegations of fact which can support the existence of [an agency] relationship." *Nuevo Mundo*, 2004 WL 112948, at *4; *accord Cohen v. Standard Bank Inv. Corp.*, No. 87 Civ. 3802 (SAS), 1998 WL 782024, at *5-6 (S.D.N.Y. Nov. 6, 1998) (dismissing claim where the complaint failed to plead sufficient facts to establish an agency relationship).

The Complaint does not come close to meeting the legal requirements, whatever the standard of pleading. Therefore, the agency claim against Mr. Maounis must be dismissed.

> (2) **Plaintiffs May Not Make an End Run Around the Corporate Form by Asserting Agency Liability Under the CEA.**

Plaintiffs' failure to allege facts sufficient to pierce the corporate veil, *see supra* Part III.A, also mandates dismissal of the principal-agent claims against Mr. Maounis. Where, as here, Plaintiffs seek to hold an individual liable based on agency principles when that person

14

would be shielded from liability under principles of corporate law, Plaintiffs must satisfy the test

for piercing the corporate veil.  *Kashfi v. Phibro-Salomon*, 628 F. Supp. 727, 735 (S.D.N.Y.

1986); *Fidenas AG v. Honeywell Inc.*, 501 F. Supp. 1029, 1037 (S.D.N.Y. 1980) (applying veil-

piercing test where plaintiff sought to hold parent corporation liable for the acts of an employee

of its subsidiary); *In re Natural Gas*, 337 F. Supp. 2d at 515 (recognizing that Section 2(a)(1)(B)

of the CEA must be understood in light of the "equally well-established principles limiting

piercing a corporate veil").

The reason for this requirement follows from the skepticism with which the courts

consider any effort to pierce the corporate veil.  *See supra* p. 9.  Application of the veil-piercing

test to an alleged agency relationship "prevents a putative plaintiff from making an end run

around the 'piercing the corporate veil' doctrine by styling its claim in agency terms." *Royal*

*Indus., Ltd. v. Kraft Foods, Inc.*, 926 F. Supp. 407, 413 (S.D.N.Y. 1996).  It would make little

sense for the courts to enforce with care the metes and bounds of the veil-piercing law if a

plaintiff could run roughshod over those boundaries simply by recharacterizing his or her claim

as based on the responsibilities of a principal for an agent.

This rationale applies with particular force here, where Plaintiffs seek to hold Mr.

Maounis liable for the alleged misconduct of an employee of a corporation in which he has

invested and is an officer:  "[T]he avoidance of personal liability for obligations incurred by a

business enterprise is one of the fundamental purposes of doing business in a [limited liability]

form." *Sahu*, 2006 WL 3377577, at *3; *accord Browning-Ferris Indus. of Ill.*, 195 F.3d at 959.

Accordingly, courts have consistently held that the owner or officer of a corporation will not be

held vicariously liable for violations of a federal statute by a corporation, its employees or agents

absent "special circumstances," such as facts indicating that the owner or officer was personally

involved in the alleged conduct. *See Meyer*, 537 U.S. at 285-286.[10] If the allegations of "control" and domination are insufficient to justify piercing the veil, *see supra* Part III.A, then they cannot be sufficient to permit the same result simply by labeling Mr. Maounis as a "principal" for whom others at Amaranth Advisors were acting as "agents."

   (3) **The Aiding and Abetting Claim Must Be Dismissed for Failure to Allege Any of the Necessary Elements.**

  Plaintiffs' claim against Mr. Maounis for aiding and abetting the alleged market manipulation must be dismissed because the Complaint fails to allege any of the required elements or any facts to "render the claim plausible." *Iqbal v. Hasty*, 490 F.3d 143, 158 (2d Cir. 2007).[11] To recover on an aiding and abetting claim under the CEA, Plaintiffs must prove that the defendant (1) had knowledge of the principal's intent to violate the CEA, (2) intended to further that violation, and (3) committed some act in furtherance of the principal's objective. *See In re Natural Gas*, 337 F. Supp. 2d at 511; *Damato v. Hermanson*, 153 F.3d 464, 473 (7th Cir. 1998).

  The Complaint fails to allege a single fact to show that Mr. Maounis "substantially assisted" in the commission of the alleged violation. *Benfield v. Mocatta Metals Corp.*, No. 91-

---

[10] *See also Sasso v. Cervoni,* 985 F.2d 49, 50 (2d Cir. 1993); *Rella v. N. Atl. Marine, Ltd.*, No. 02 Civ. 8573, 2004 WL 1418021, at *9 (S.D.N.Y. June 23, 2004) ("In general, absent bad faith or fraud, corporate officers and directors acting within the scope of their employment cannot be held personally liable for breaches of contract or tortious acts committed by their corporations."); *see also Ez-Tixz, Inc. v. Hit-Tix, Inc.*, No. 93 Civ. 3791, 1995 WL 77589 (S.D.N.Y. Feb. 27, 1995) (recognizing that New York law "does not recognize vicarious liability for directors, officers, agents or shareholders ... merely because of his office and he is liable only for torts in which he participated or which he authorized or directed") (citations omitted); *U.S. v. Lorantffy Care Center*, 999 F. Supp. 1037, 1045 (N.D. Ohio 1998).

[11] Because the underlying violation—the alleged market manipulation—sounds in fraud, *see supra* Part I, Plaintiffs' aiding and abetting claim is subject to Rule 9(b)'s heightened pleading standard. *See Krause,* 356 F. Supp. 2d at 338-39. As the Complaint fails to meet the more lenient "plausibility" standard, it cannot meet the heightened Rule 9(b) standard.

Civ-8255, 1992 U.S. Dist. LEXIS 3031, at *20 (S.D.N.Y. Mar. 13, 1992); *IIT v. Cornfeld*, 619

F.2d 909, 922 (2d Cir. 1980).[12]  "'[S]ubstantial assistance exists' where the alleged aider and

abettor has played an active role in furthering the … violation." *Thorncock v. Kinderhill Corp.*,

749 F. Supp. 513, 516 (S.D.N.Y. 1990).  The allegations that Mr. Maounis served as "owner"

and "chief executive" do not do the trick.  *Benfield*, 1992 U.S. Dist. LEXIS 3031, at *20

(allegation that defendants allowed principal to market certain precious metal options, absent

allegations showing that the defendants were involved in the fraud itself, was insufficient to

withstand motion to dismiss); *Weber v. E.D. & F. Man Int'l, Inc.*, No. 97 C 7518, 1999 U.S.

Dist. LEXIS 495, at *7 (N.D. Ill. Jan. 12, 1999) (dismissing claim for aiding and abetting

"because [plaintiffs] have not alleged that defendant committed any act in furtherance of

[principal's] fraud").[13]

      Further, the Complaint contains no facts that support the knowledge or intent elements of

the aiding and abetting claim.  Under the "CEA … an aider and abettor must not only know of

the principal's violation of the law, they must willfully assist in the violation and share the

principal's intent." *Benfield*, 1992 U.S. Dist. LEXIS 3031, at *19 (citing *Bosco v. Serhant*, 836

F.2d 271, 279 (7th Cir. 1987).  "[P]roof of a specific unlawful intent to further the underlying

violation is necessary before one can be found liable for aiding and abetting a violation of the

Act." *In re Richardson Sec., Inc.,* No. 78-10, 1981 CFTC LEXIS 629, at *13 (C.F.T.C. Jan. 27,

---

[12] This aiding-and-abetting claim also fails because Plaintiffs have not pled adequately their market manipulation claim against the putative "principals."  *See, e.g., Tatum v. Legg Mason Wood Walker, Inc*., 83 F.3d 121, 123 n.2 (5th Cir. 1996) ("to recover damages from a secondary party in an action for 'aiding and abetting' liability under the Commodities Exchange Act, a plaintiff must first prove that a primary party committed a commodities violation").

[13] As discussed *supra*, pp. 1, 5-6, 11, the Complaint otherwise fails to connect Mr. Maounis to any violative acts.

1981).  Nowhere in the Complaint do Plaintiffs allege that Mr. Maounis had knowledge of, much less the specific intent to assist in, the alleged manipulation.  *Damato*, 153 F.3d at 472 ("stress[ing] that a plaintiff … must allege that the aider and abettor acted *knowingly*") (emphasis added).  The aiding and abetting claim must be dismissed because of this failure as well.[14]

### C.     The "Control Person" Claim Under Section 13(b) of the CEA Fails Because that Provision Expressly Applies only to Actions Brought by the CFTC.

The "control person" claim brought under Section 13(b) of the Act must be dismissed because that provision expressly applies only to actions brought by the CFTC.  Section 13(b) of the CEA provides that any person who "controls" certain persons who violate the Act, its rules, regulations, or orders "may be held liable for such violation in any action *brought by the Commission* to the same extent as such controlled person."  7 U.S.C. §13c(b) (emphasis added).  The language of the statute is unambiguous:  Liability may only arise in "an action brought by the Commission," not in an action brought by private parties.  "[I]t is an elemental canon of statutory construction that …. [w]hen a statute limits a thing to be done in a particular mode, it includes the negative of any other mode."  *Transamerica Mortgage Advisors, Inc. (TAMA) v. Lewis*, 444 U.S. 11, 19 (1979).

Unsurprisingly, for this reason, courts in this District and elsewhere have routinely held that there is no private right of action under Section 13(b) of the CEA.  *See*, *e.g.*, *Michelson v. Merrill Lynch Pierce, Fenner & Smith, Inc.*, 619 F. Supp. 727, 739 (S.D.N.Y. 1985) ("[S]ection

---

[14] It is not surprising that Plaintiffs have failed to allege that Mr. Maounis knew of the alleged misconduct or had the specific intent to aid in the alleged manipulation in light of the fact, noted *supra* footnotes 2, 4, that the regulatory investigations by the CFTC and FERC, as well as a Senate investigation, have not resulted in Mr. Maounis being charged, let alone found culpable.  *See CFTC v. Amaranth Advisors, LLC*, No. 07 Civ 6682 (S.D.N.Y. filed July 25, 2007); *Amaranth Advisors, LLC*, 20 FERC ¶ 61,085, Dkt. No. IN07-26-000 (July 26, 2007); PSI Staff Report, Excessive Speculation in the Natural Gas Markets (June 25, 2007 & July 9, 2007), available at http://levin.senate.gov/newsroom/supporting/2007/PSI.Amaranth.062507.pdf.

[13(b)] unambiguously provides for an administrative forum, that is, the … [CFTC], to impose sanctions upon principals who control agents engaging in prohibited activities.  We, therefore find … that there exists no private right of action under Section 13(b) of the CEA."); *Fed. Deposit Ins. Corp. v. FSI Futures, Inc.*, No. 88 Civ. 0906, 1991 WL 224302, at *7 (S.D.N.Y. Oct. 16, 1991); *Fustok v. Conticommodity Servs, Inc.*, 618 F. Supp. 1069, 1073 (S.D.N.Y. 1985); *see also* Phillip McBride Johnson & Thomas Lee Hazen, *Derivatives Regulation*, § 5.10[11] (2004) ("section 13(b) is limited to actions brought by the Commission and thus does not impose liability in private actions … solely on the basis of control").

Because there is no private right of action for this "control person" provision of the CEA, the Court should dismiss the claim.

> **D.     The Complaint Does Not State a Claim Against Mr. Maounis Under CFTC Rule 166.3 Because Mr. Maounis Was Not a Commission Registrant, and There Is No Private Right of Action Under that Rule.**

The Complaint also purports to state a claim "pursuant to … 17 C.F.R. §166.3," a CFTC rule that requires a "Commission registrant" to supervise diligently certain of its partners, officers, employees, and agents.  ¶ 255.  However, Mr. Maounis was not a "Commission registrant" and, in any case, there is no private right of action under Rule 166.3.  Therefore, the Complaint cannot state a claim against Mr. Maounis pursuant to that rule.

By its express terms, Rule 166.3 applies only to "Commission registrants," defined as "any person who is registered or required to be registered with the Commission pursuant to the Act or any rule, regulation, or order thereunder."  17 C.F.R. § 166.1.[15]  The Complaint does not,

---

[15] CFTC Rule 166.3 provides that "[e]ach *Commission registrant*, except an associated person who has no supervisory duties, must diligently supervise the handling by its partners, officers, employees and agents ... of all commodity interest accounts carried, operated, advised or introduced by the registrant and all other activities of its partners, officers, employees and

*(Footnote continued)*

and could not, allege that Mr. Maounis was a Commission registrant during the class period or that he was required to be registered. Therefore, even if the Plaintiffs were authorized to bring a claim under Rule 166.3, the Complaint would not state a claim against a non-registrant such as Mr. Maounis.

Moreover, courts consistently have held that there is no private right of action for alleged violations of Rule 166.3. *See Fustok,* 618 F. Supp. at 1073; *Bennett v. E.F. Hutton Co., Inc.*, 597 F. Supp. 1547, 1555 (D.C. Ohio 1984); *Commodity Futures Trading Comm'n v. Carnegie Trading Group, Ltd.*, 450 F. Supp. 2d 788, 805 (N.D. Ohio 2006); *Lamson v. LFG, LLC*, No. 00C3094, 2000 WL 33539382, at *1 (N.D. Ill. June 22, 2000). For this additional reason, Plaintiffs' claim against Mr. Maounis under Rule 166.3 fails and should be dismissed.

### E.    The Unjust Enrichment Claim Must Be Dismissed Because Plaintiffs Fail to Allege Any Direct Benefit or a Quasi-Contractual Relationship with Mr. Maounis.

Plaintiffs proffer a single, and wholly inadequate, group allegation in support of their unjust enrichment claim: "Defendants financially benefited from their unlawful acts," which "caused Plaintiffs [to] . . . transact natural gas contracts at artificial prices." ¶ 267. First, Plaintiffs' boilerplate allegation does not assert, as it must, that Mr. Maounis received any direct benefit at the expense of Plaintiffs. Second, Plaintiffs do not allege the existence of a quasi-contractual relationship between Mr. Maounis and Plaintiffs, which also is required in order to recover for unjust enrichment.[16]

---

agents ... relating to its business as a Commission registrant." 17 C.F.R. § 166.3 (emphasis added).

[16] In addition, Plaintiffs' claim for unjust enrichment fails because it depends entirely on the insufficient allegations of "unlawful acts" made elsewhere in the Complaint. ¶ 267. For the reasons discussed earlier, there is no proper underlying allegation of a violation of the CEA. *See supra* Part II. Where, as here, an "unjust enrichment claim 'hinges on ... practices claimed by [a]

*(Footnote continued)*

(1)    **The Complaint Does Not Allege the Receipt of Any Direct Benefit by Mr. Maounis at Plaintiffs' Expense.**

The Complaint does not state a cause of action for unjust enrichment against Mr. Maounis because it does not allege that he received any direct benefit at Plaintiffs' expense. The essence of an unjust enrichment "is that one party parted with money or a benefit that was received by another *at the expense of the first party*." *In re Bayou Hedge Funds Inv. Litig.*, 472 F. Supp. 2d 528, 531 (S.D.N.Y. 2007) (emphasis added). The benefit obtained must be both specific and flow directly from the plaintiff; an allegation that a defendant "received some indirect benefit ... does not establish the specific and direct benefit necessary to support an unjust enrichment claim." *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000).

Here, the Complaint does not allege that *any* of the Amaranth entities received any direct benefit *from* Plaintiffs, who are natural gas futures traders with no direct relationship to Mr. Maounis. Mr. Maounis never traded natural gas futures and, therefore, could not have received a benefit as a counterparty to a natural gas futures trade. *See CompuDyne Corp. v. Shane*, 453 F. Supp. 2d 807, 833 (S.D.N.Y. 2006) (holding that hedge fund could not have been enriched at plaintiffs' expense where plaintiffs were not counterparties to the transactions, because any benefits allegedly received came from counterparties to those transactions, not from plaintiffs). There is no allegation that any Amaranth fund traded with any Plaintiff, and no allegation that any Amaranth entity from which Mr. Maounis received compensation dealt directly with Plaintiffs.

---

plaintiff to be illegal,' and the allegations of illegality in the complaint fail, the unjust enrichment claim must be dismissed." *Kramer v. Pollock-Krasner Found.*, 890 F. Supp. 250, 257 (S.D.N.Y. 1995); *see also Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.*, 171 F.3d 912, 937 (3d Cir. 1999).

21

Furthermore, any theoretical benefit that Mr. Maounis could have obtained from the alleged trading activity could only have accrued in a highly attenuated fashion, and therefore could not provide the basis for a claim for unjust enrichment against him. *See Bangkok Crafts Corp. v. Capitolo di San Pietro in Vaticano*, 331 F. Supp. 2d 247, 256 (S.D.N.Y. 2004) ("[A]n attenuated chain of payment cannot support a claim for unjust enrichment."). First, Plaintiffs would have to plead and prove that they traded with an Amaranth entity, which they cannot do. Then, they would have to show that the trading resulted in a payment to the fund advisor, which, in turn, resulted in some change in the amount of compensation paid to Mr. Maounis. Even if Plaintiffs had alleged such a theoretical chain of "benefits," which they have not,[17] the law simply does not allow such an attenuated "benefit" to form the basis of an unjust enrichment claim against Mr. Maounis. *Id.* at 256 (allegation that manager received commissions or fees "out of" royalties paid to company insufficient to support a claim for unjust enrichment); *see also In re Bayou Hedge Funds*, 472 F. Supp. 2d at 532.[18]

(2)     **The Complaint Fails to Allege the Necessary Quasi-Contractual Relationship Between Plaintiffs and Mr. Maounis.**

Plaintiffs' claim for unjust enrichment also fails because Plaintiffs do not, and cannot, allege the existence of a failed contractual relationship or quasi-contractual relationship between themselves and Mr. Maounis. *Reading Int'l, Inc. v. Oaktree Capital Mgmt. LLC,* 317 F. Supp.

---

[17] Indeed, as Plaintiffs concede, the Amaranth funds lost money on their NYMEX trades. ¶¶ 170-71.

[18] In that regard, a plaintiff cannot recover under an unjust enrichment theory from a shareholder of a corporation for a benefit conferred upon the corporation. *Brumbelow v. Law Offices of Bennett and Deloney, P.C.,* 372 F. Supp. 2d 615 (D. Utah 2005); *McKesson Corp. v. Green,* 610 S.E.2d 54 (Ga. 2005); *Accuimage Diagnostics Corp. v. Terarecon, Inc.,* 260 F. Supp. 2d 941 (N.D. Cal. 2003); *McMillan v. Weinberg,* No. 98-3568, 1999 WL 706707 (Mass. Super. Ct. Aug. 17, 1999).

2d 301, 333-334 (S.D.N.Y. 2003).  The cause of action for unjust enrichment may not be

"remove[d] [] from the context in which [it] must be viewed:  as an alternative to contract, where

a contractual relationship has legitimately failed."  *Reading Int'l*, 317 F. Supp. 2d at 344 (*citing*

*Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 905 (2d Cir. 1997).  Because unjust enrichment

is a quasi-contractual remedy, it "clearly contemplate[s] that the defendant and the plaintiff must

have had some type of direct dealing, an actual relationship …."  *Redtail Leasing, Inc. v.*

*Bellezza*, No. 95 Civ. 5191, 1997 WL 603496, at *8 (S.D.N.Y. Sept. 30, 1997); *In re Motel 6*

*Secs. Litig.,* 161 F. Supp. 2d 227, 232 (S.D.N.Y. 2001); *Gristede's Foods, Inc. v. Unkechauge*

*Nation*, 532 F. Supp. 2d 439, 454-55 (E.D.N.Y. 2007) (failure to allege prior course of dealing

with defendant fatal to claim for unjust enrichment).[19]

Plaintiffs have not alleged that they had any relationship or prior dealings with Mr.

Maounis, quasi-contractual or otherwise.[20]  There is no allegation that Mr. Maounis entered into

any futures contracts with Plaintiffs, or had any business with them at all.  Because Plaintiffs

have not alleged (and cannot allege) an "actual, substantive relationship" with Mr. Maounis, the

unjust enrichment claim against him must be dismissed.[21]  *Id.*

---

[19] *See also Reading Int'l, Inc.,* 317 F. Supp. 2d at 333-334 (dismissing unjust enrichment claim where plaintiffs had not alleged that they had a contractual or quasi-contractual relationship with defendants, or even any business dealings); *Abbatiello v. Monsanto Co.*, 522 F. Supp. 2d 524, 543-44 (S.D.N.Y. 2007) (landowners could not state claim for unjust enrichment for cost of environmental cleanup because they had not alleged contractual or quasi-contractual relationship with defendants); *Czech Beer Imps., Inc. v. C. Haven Imps., LLC*, No. 04 Civ. 2270, 2005 WL 1490097, at *7 (S.D.N.Y. June 23, 2005).

[20] For the reasons already discussed, *see supra* Parts III.A, B, Mr. Maounis cannot be held responsible for the actions of the other Amaranth Defendants.  Even if he could, Plaintiffs' unjust enrichment claim would still fail.  *See* Memorandum of Amaranth Advisors, pp. 28-29; Memorandum of the Other Amaranth Entities, pp. 21-23.

[21] Plaintiffs' request for a constructive trust, ¶ 270, must also be dismissed, because that remedy requires plaintiffs to plead and prove an underlying claim of unjust enrichment, and

*(Footnote continued)*

**F.    The Complaint Should Be Dismissed with Prejudice with Respect to Mr. Maounis.**

Plaintiffs have already benefited from the extensive investigations, reports, orders, and complaints of the U.S. Senate, CFTC, and the FERC, none of which found Mr. Maounis culpable.  Plaintiffs rely upon — in many instances pleading word-for-word from — these sources, and there is no suggestion in their Complaint that they have any alternative source of allegations.  After re-pleading the Consolidated Complaint, Plaintiffs also have failed to offer any facts to connect Mr. Maounis to the alleged manipulation.  Accordingly, permitting Plaintiffs to amend the Complaint as to Mr. Maounis for a second time would be futile, and the Court should dismiss the Complaint with prejudice.  *Foman v. Davis*, 371 U.S. 178, 182 (1962).

---

because Plaintiffs have made no allegations of the additional elements necessary to establish a constructive trust: the existence of a confidential or fiduciary relationship with Mr. Maounis, or the existence of any promise between Mr. Maounis and Plaintiffs.  *See* Memorandum of Amaranth Advisors, pp. 29-30; Memorandum of the Other Amaranth Entities, p. 22 note 18; *Modica v. Modica*, 791 N.Y.S.2d 134 (2d App. Div. 2005).

## CONCLUSION

For the reasons set forth in this memorandum and in those portions of the memoranda in support of dismissal filed by the Amaranth Defendants and referenced in this memorandum, Mr. Maounis respectfully requests that the Court dismiss with prejudice all claims in the Complaint against him, and grant such other relief as this Court deems just and proper.

Dated: April 28, 2008
       New York, New York

                                     Respectfully submitted,
                                       HELLER EHRMAN LLP


                                       /s/ Geoffrey F. Aronow_____
                                       Geoffrey F. Aronow (*pro hac vice*)
                                       geoffrey.aronow@hellerehrman.com
                                       Thomas S. Kimbrell (*pro hac vice*)
                                       thomas.kimbrell@hellerehrman.com
                                       1717 Rhode Island Avenue, NW
                                       Washington, DC 20036
                                       (202) 912-2000 - Telephone
                                       (202) 912-2020 - Facsimile

                                       Richard S. Goldstein (RG-9560)
                                       richard.goldstein@hellerehrman.com
                                       Andrew Levine (AL-3552)
                                       andrew.levine@hellerehrman.com
                                       Times Square Tower
                                       7 Times Square
                                       New York, NY 10036
                                       (212) 832-8300 - Telephone
                                       (212) 763-7600 - Facsimile

                                       *Attorneys for Defendant Nicholas M. Maounis*